211 P.3d 1213

**Michelle Anne EGAN, Petitioner,**

v.

**The Honorable Elaine FRIDLUND–HORNE, Judge of the Superior Court of the State of Arizona, in and for the County of Coconino, Respondent Judge,**

**Therese Marie Hochmuth, Real Party in Interest.**

**No. 1 CA–SA 08–0240.**

Court of Appeals of Arizona, Division 1, Department A.

April 14, 2009.

Bryon Middlebrook, PC by Bryon Middlebrook, Flagstaff, Attorney for Petitioner.

Mikkel Jordahl PC by Mikkel Jordahl, Flagstaff, Attorney for Real Party in Interest.

## OPINION

BROWN, Judge.

¶ 1 This special action addresses questions of first impression relating to the superior court's decision to grant substantial visitation rights to a person standing in loco parentis under Arizona Revised Statutes ("A.R.S.") section 25–415(C) (2007). Because we conclude that the court failed to employ adequate procedural and evidentiary safeguards to protect the interests of the legal parent, we vacate the court's temporary order granting visitation rights and remand for further proceedings.

## BACKGROUND[1]

¶ 2 Michelle Egan and Therese Hochmuth were partners in a same-sex relationship for seventeen years. They agreed they wanted to have a child together and that Egan would give birth to the child. They made arrangements with a mutual friend to donate sperm, Egan was artificially inseminated, and the child was born in 2000. They jointly raised the child for seven years until their relationship ended in March 2007. At that point, they verbally agreed to alternate weeks with the child. In July, however, Egan expressed concern about the impact of the visitation schedule on the child and Hochmuth "reluctantly agreed" to reduced visitation because she "had no choice."[2] The revised schedule provided that Hochmuth would have visitation from Sunday through Thursday, every other week. Then in November, Egan unilaterally changed the schedule to Monday through Thursday every other week, and one month later, she further reduced visitation to Monday through Wednesday every other week.

¶ 3 Dissatisfied with the reduced visitation arrangement, Hochmuth filed a petition for "custody/visitation" under § 25–415(C). She alleged that she stood in loco parentis to the child based on her extensive involvement in raising her for seven years. She requested an order: (1) awarding significant visitation with the child; (2) requiring the parties to confer and agree on major life issues, including education, religion, and healthcare; (3) directing the parties to create and maintain reciprocal wills granting testamentary guardianship status to the other party; and (4) providing for ninety days' advance written notice of any intent by Egan to relocate the child. Egan moved to dismiss, contending that Hochmuth was not entitled to seek in loco parentis visitation rights because Egan had not denied Hochmuth the right to visit the child and therefore Egan's decision to allow some visitation must control.

¶ 4 Following briefing and argument, the superior court denied the motion to dismiss, relying in part on language from this court's decision in *Thomas v. Thomas,* 203 Ariz. 34, 49 P.3d 306 (App.2002), in which we stated that a nonparent could seek visitation with the child of her former same-sex partner. The superior court then scheduled an evidentiary hearing to determine temporary orders. At the hearing, the court accepted the parties' stipulation that Hochmuth met the in loco parentis definition set forth in A.R.S. § 25–415(G)(1).[3] Hochmuth presented evidence about her extensive involvement in raising the child. Hochmuth testified that before the child started school, she cared for her at home while Egan worked as a teacher. When Egan could care for the child on evenings and weekends, Hochmuth worked outside the home. One of the child's teachers testified that both parties were actively engaged in the child's education, volunteering at school and attending parent-teacher conferences and other school activities. Hochmuth further testified about her desire for equal visitation and that, at a minimum, she

---

1. For ease of reference, when we discuss a "person who stands in loco parentis" in the context of § 25–415, we refer to such person as a "nonparent." *See* A.R.S. § 25–415 ("Custody by nonparent"); *infra* ¶ 31. Similarly, we refer to a "legal parent," as defined in § 25–415(G)(2), as a "parent."

2. The agreement is based on a handwritten note from Egan to Hochmuth dated July 21, 2007, setting forth the revised visitation schedule.

3. To establish in loco parentis status, Hochmuth was required to prove that the child (1) treated her as a parent and (2) formed a meaningful parental relationship with her for a substantial period of time. *See* A.R.S. § 25–415(G)(1).

wanted the court to enforce her "written agreement" with Egan.

¶ 5 Egan acknowledged that she had initially agreed to split time with the child equally and that the child was "doing great." Egan stated, however, that her daughter had an emotional breakdown in July 2007 and did not want to return to visit Hochmuth until "something" changed. Egan explained that her daughter was crying hysterically, chewing on a towel, and was not going to leave the house. Egan then discussed the situation with Hochmuth, who became very upset about reduced visitation. Egan testified that she further reduced visitation based on the child's desire to spend more time with Egan and her own opinion of what was in the child's best interest. In response to a question posed to her about returning to the equal visitation arrangement, Egan testified that she did not want to "put my kid through that again." On cross-examination, Egan acknowledged she had agreed in writing to a Sunday through Thursday, every-other-week visitation schedule in July 2007.

¶ 6 In its subsequent order, the superior court found that the parties were equally involved with the child's upbringing; that the child excelled in school, even after the separation of the parties; and that the only evidence of negative impact of the equal parenting time arrangement was Egan's testimony about the child's breakdown. The court again referred to the similarity of the *Thomas* case, noting this court's statement that a trial court has considerable discretion in awarding visitation. The court then granted Hochmuth temporary visitation rights "in accordance with the model parenting time plan for six to nine year old children, either, Plan C(1) or C(2)" and instructed the parties to determine which plan would work best for the child.[4] Because the parties were unable to agree on a plan, the court entered a subsequent order adopting a visitation plan

that divided the child's time equally between the parties, but also providing that she would not be away from Egan for more than five consecutive days.

¶ 7 Egan then filed this special action and requested a stay of the court's temporary visitation order. This court granted the stay request, ordering the parties to continue the Monday through Wednesday, every-other-week visitation schedule they had been following since December 2007. Following oral argument, we accepted jurisdiction and stated that this decision would follow.

## JURISDICTION AND STANDARD OF REVIEW

¶ 8 Because the order entered in this case is a temporary order granting visitation rights,[5] there is no adequate and speedy remedy by appeal. *See Finck v. Superior Court,* 177 Ariz. 417, 418, 868 P.2d 1000, 1001 (1993); Ariz. R.P. Spec. Actions 1(a). This is also a matter of statewide concern. *See Ingram v. Shumway,* 164 Ariz. 514, 516, 794 P.2d 147, 149 (1990). In our discretion, we accept jurisdiction. *See Phoenix Newspapers, Inc. v. Ellis,* 215 Ariz. 268, 271, ¶ 12, 159 P.3d 578, 581 (App.2007). We review de novo the superior court's interpretation and application of statutory and constitutional provisions. *Riepe v. Riepe,* 208 Ariz. 90, 92, ¶ 5, 91 P.3d 312, 314 (App.2004). We are not bound by the court's conclusions of law "that combine both fact and law when there is an error as to the law." *Id.*

## DISCUSSION

¶ 9 To obtain visitation rights with the child under Arizona law, Hochmuth was required to petition under § 25–415(C), which provides in part as follows: "The superior court may grant a person who stands in loco parentis to a child, including grandparents and great-grandparents, who meet the re-

---

4. The court also granted "temporary custodial rights" to Hochmuth in accordance with § 25–403.06 and § 25–408 but later vacated that portion of the order in response to Egan's motion for reconsideration. After additional briefing, the court clarified that it had referenced the model parenting plan as "guidance as to what experts in the field propose for access, based upon the age and developmental needs of a child

and the relationship the child has with its 'parents.' "

5. Neither party has challenged the authority of the superior court to grant a "temporary" visitation order under § 25–415(C) and therefore we do not address it here.

quirements of § 25–409 reasonable visitation rights to the child on a finding that the visitation is in the child's best interests[.]" Based on the parties' stipulation, the superior court determined that Hochmuth stands in loco parentis to the child. Egan does not challenge that determination. Thus, the only issues before us relate to the court's decision to grant equal visitation rights to Hochmuth pursuant to § 25–415(C).

## I. No Requirement to Show Denial of Visitation

¶ 10 Egan first argues that the superior court abused its discretion in awarding visitation rights because Hochmuth can only seek visitation rights if Egan has denied her the right to visit the child. She asserts that because she has allowed some visitation, and continues to do so, Hochmuth cannot seek additional visitation under § 25–415(C). Stated differently, Egan contends that a nonparent must show a complete denial of visitation, or the substantial equivalent, as a prerequisite to filing a petition under § 25–415(C).

¶ 11 This court addressed a similar issue in two prior decisions involving challenges to the constitutionality of the grandparent visitation statute, A.R.S. § 25–409 (2007). In *Jackson v. Tangreen*, the court stated that a petition for grandparent visitation was appropriate only if the grandparent had been denied visitation, not where it was "merely limited." 199 Ariz. 306, 310, ¶ 14, 18 P.3d 100, 104 (App.2000). A year later, in *McGovern v. McGovern*, 201 Ariz. 172, 179, ¶ 23, 33 P.3d 506, 513 (App.2001), the court again considered the rights of grandparents to seek visitation and determined that the language used in *Jackson* was dictum because the issue in that case involved a parent's decision

to terminate visitation, not merely limit it. The *McGovern* court determined that neither § 25–409(C) nor any Arizona decision clearly imposes such a condition on grandparent visitation and concluded that "a parent's willingness to allow some visitation is but one factor to consider under § 25–409." [6] *Id.* at ¶¶ 23–24.

¶ 12 We are persuaded by the analysis in *McGovern*, finding that neither § 25–415 nor § 25–409 *requires* a nonparent to establish a denial of visitation as a condition precedent to seeking in loco parentis visitation rights. As such, we reject the argument that Hochmuth's petition should have been dismissed because it failed to allege that Egan had completely denied visitation with the child.

## II. Procedural and Evidentiary Safeguards

¶ 13 Egan next argues that the superior court abused its discretion by failing to give any weight to her decision as to the amount of visitation Hochmuth should have with the child.[7] Egan further asserts that because Hochmuth has not alleged that Egan is an unfit mother, Egan's decision as to the amount of visitation should be presumed to be reasonable and in the child's best interests. Hochmuth acknowledges that Egan is entitled to a fit parent presumption, but contends she rebutted the presumption because Egan consented to and fostered a parent-child relationship for a significant period of time.

¶ 14 Egan has not challenged the constitutionality of § 25–415; however, our obligation is to interpret and apply the statute in a constitutional manner. *See Downs v. Scheffler*, 206 Ariz. 496, 502, ¶ 25, 80 P.3d

---

6. Section 25–409(C) provides that in determining the child's best interests, the court shall consider all relevant factors, including: (1) the historical relationship, if any, between the child and person seeking visitation; (2) the motivation of the requesting party in seeking visitation; (3) the motivation of the person denying visitation; (4) the quantity of visitation time requested and potential adverse impact that visitation will have on the child's customary activities; and (5) if one or both the child's parents are dead, the benefit in maintaining an extended family relationship.

7. Egan also asserts that the court acted in excess of its legal authority by issuing a "custodial" order. Although the court improperly granted temporary *custody* orders following the hearing, the court later modified its ruling to correct the error. We address this issue only in the context of whether the court's equal visitation order too closely approaches an order granting joint custody. *Infra* ¶¶ 42–45.

775, 781 (App.2003) ("We recognize the necessity of interpreting § 25–415 in light of constitutional requirements."); *McGovern,* 201 Ariz. at 178, ¶ 20, 33 P.3d at 512 (noting that a trial court must not only apply "the statute as written," but must also apply procedural and evidentiary safeguards in a "constitutionally acceptable manner"). Thus, we begin by reviewing the scope of Egan's right to parent her child.

## A. Fundamental Right to Parent

¶ 15 The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The liberty interest parents have in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests" recognized by the Supreme Court. *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (citing more than seventy-five years of precedent confirming the fundamental rights of parents to control the upbringing of their children); *see also Granville v. Dodge,* 195 Ariz. 119, 123, ¶ 19, 985 P.2d 604, 608 (App. 1999) ("[P]arents have a constitutionally protected right under the Fourteenth Amendment to raise their children as they see fit.").

¶ 16 It is also well established, however, that parents' rights are not without limit or beyond regulation. *Dodge,* 195 Ariz. at 124, ¶ 20, 985 P.2d at 609 (citing *Ginsberg v. New York,* 390 U.S. 629, 639, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)). States may regulate the well-being of children and thus restrict the control of parents in a number of areas, including school attendance, child labor, prevention of abuse or neglect, inoculation against diseases, and proper restraint when riding in a vehicle. *Id.* (citations omitted). Consistent with this limitation, all fifty states have adopted statutes allowing grandparents to petition for custody/visitation with their grandchildren under certain circumstances. *Troxel,* 530 U.S. at 74 n. *, 120 S.Ct. 2054. But fewer states have *legislatively* extended similar rights to other nonparents based on the concept of in loco parentis. *See, e.g., Janice M. v. Margaret K.,* 404 Md. 661, 948 A.2d 73, 88 (2008) (citing third-party visitation statutes in Minnesota and Rhode Is-

land). Thus, the overwhelming majority of reported decisions construing third-party visitation statutes involve grandparent visitation provisions.

¶ 17 Although our court has previously analyzed § 25–415 in different contexts, no appellate court has considered the application of the statute in terms of how the superior court should decide best interests of the child and the reasonableness of a visitation order. Accordingly, we find it appropriate to look to the constitutional and statutory principles discussed in several grandparent visitation cases, including *Troxel,* to construe Arizona's third-party visitation statute. *See Downs,* 206 Ariz. at 502, ¶ 25, 80 P.3d at 781 (citing *Troxel,* 530 U.S. at 70, 120 S.Ct. 2054) (recognizing that parent's wishes concerning custody "are entitled, at a minimum, to special weight as a measure of protection for the parent's constitutional right to rear the child"); *McGovern,* 201 Ariz. at 177, ¶ 14, 33 P.3d at 511; *Jackson,* 199 Ariz. at 310, ¶ 14, 18 P.3d at 105; *Dodge,* 195 Ariz. at 125, ¶ 22, 985 P.2d at 610; *see also Soohoo v. Johnson,* 731 N.W.2d 815, 820–25 (Minn.2007) (applying the guiding principles from *Troxel* to determine constitutionality of *third-party visitation* statute).

¶ 18 In *Troxel,* paternal grandparents petitioned for visitation with children born out of wedlock under a Washington state statute allowing "any person" to petition for visitation rights at "any time" if it served the child's best interests. 530 U.S. at 60–61, 120 S.Ct. 2054. The paternal grandparents were unhappy with the otherwise fit mother's decision to restrict their visitation to one short visit per month after their son, the father of the children, committed suicide. *Id.*

¶ 19 In a plurality decision, the Supreme Court found the statute was unconstitutional as applied, based on a combination of several factors: (1) the mother was a fit parent and the trial court failed to recognize the presumption that she acted in her children's best interest; (2) the mother did not seek to completely deny visitation, but rather, merely sought to limit it; (3) the trial court failed to accord mother's decision any material weight; and (4) the statute was overbroad in that it placed no limits on who could petition

for visitation or the circumstances under which it could be granted.[8] *Id.* at 67–71.

¶ 20 One of the problems addressed by the Court in *Troxel* was that the trial court did not give any special weight to the mother's determination of her children's best interests. *Id.* at 58, 120 S.Ct. 2054. Rather, the trial court imposed a burden on the parent of *"disproving* that visitation would be in the best interest of her daughters." *Id.* at 69, 120 S.Ct. 2054. Thus, the Court found that the "decisional framework ... directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* The Court stated:

> [O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.... The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically, it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

*Id.* at 68, 120 S.Ct. 2054 (quoting *Parham v. J.R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979)). The Court also noted that the "Due Process Clause does not permit States to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054. The Court declined, however, to define the "precise scope of the parental due process right in the visitation context." *Id.* at 73, 120 S.Ct. 2054.

¶ 21 This court has previously analyzed *Troxel* to determine whether Arizona's grandparent visitation statute, § 25–409, offended constitutional due process constraints.

In *Jackson,* we upheld the statute's constitutionality, determining that § 25–409 requires Arizona courts to give weight to a parent's visitation decisions and that the procedural safeguards included in the statute demonstrate that the "legislature was conscious of parents' superior right to the custody and care of their children." 199 Ariz. at 310, ¶ 14, 18 P.3d at 104 (citations omitted).

¶ 22 Similarly, in *McGovern,* this court found that § 25–409 does not violate the Fourteenth Amendment. 201 Ariz. at 178, ¶ 20, 33 P.3d at 512. The court agreed with the conclusion reached in *Jackson,* but determined that additional guidance was necessary concerning *"Troxel's* impact on the interpretation and application of § 25–409." *Id.* at 177, ¶ 14, 33 P.3d at 511. In contrast to the statute at issue in *Troxel,* Arizona's grandparent visitation statute has several self-limiting features: it is framed in permissive terms; the right to visitation arises only if the trial court finds it is in the best interests of the child; and, in determining best interests, the court is required to consider all relevant factors, including those set forth in subsection (C). *Id.* at ¶ 15. Citing *Dodge,* the court in *McGovern* also noted that the statute is structured to enable a trial court to make grandparent visitation "a minimal burden on the rights of the child's parents" and that if the court orders visitation, the order must be as "minimally intrusive as possible."[9] *Id.* at ¶ 16. The court further recognized the legislature's awareness of "parents' superior right to the custody and care of their children." *Id.*

¶ 23 "Meshing these established concepts," the *McGovern* court described the following "constitutionally based principles" that a trial court should follow in determining and quantifying grandparent visitation rights under § 25–409:(1) a trial court should recognize and apply a presumption that a fit parent's decision to deny or limit visitation was made

---

8. Three justices joined in the plurality opinion written by Justice O'Connor. In addition to those four justices, two other justices recognized the presumption that fit parents act in the best interests of their children. *McGovern,* 201 Ariz. at 176 n. 4, ¶ 11, 33 P.3d at 510 n. 4.

9. Egan contends that a visitation order imposed under § 25–415 must be "minimally intrusive." For the reasons explained in note 16, *infra* ¶ 45, we do not address the issue.

in the child's best interests; [10] and (2) a court must give "some special weight" to a fit parent's determination of whether visitation is in the child's best interests and give "significant weight" to a parent's voluntary agreement to permit some visitation. *Id.* at 177–78, ¶¶ 17–18, 33 P.3d at 511–12. The court found that properly applied, these safeguards should help a trial court avoid basing visitation orders on a mere disagreement as to what is in the child's best interests. *Id.* at 178, ¶ 19, 33 P.3d at 512 (citing *Troxel*, 530 U.S. at 67–68, 120 S.Ct. 2054). The court also observed, however, that the safeguards affected, but did not necessarily control, a trial court's determination of a child's best interests and what constitutes reasonable visitation rights. *Id.*

### B. Applicability of Grandparent Visitation Cases

¶ 24 Hochmuth contends that *Troxel, Jackson, McGovern,* and other grandparent visitation cases are not controlling or even persuasive here.[11] She argues that each of those cases involved grandparents who were third parties to the basic family unit. She contends that she stands in a much different position than a typical grandparent because: (1) Egan invited Hochmuth into a parent-like relationship with the child; (2) Egan had Hochmuth artificially inseminate her; (3) Egan used Hochmuth's name for the child's middle name; (4) Egan allowed Hochmuth's name to be on the child's birth certificate; and (5) Egan treated Hochmuth as a co-parent for seven years. Thus, according to Hochmuth, Egan should be estopped from denying substantial visitation rights based on Egan's invitation to join the family unit and participate in all aspects of the child's life.

¶ 25 We disagree with Hochmuth's argument that her significant relationships with Egan and the child place her in a different legal position from grandparents or other nonparents under the in loco parentis statute. The closeness of those relationships may well be the reason that Egan has not contested Hochmuth's in loco parentis standing. And the nature and quality of the relationships is something the court should consider in making its visitation decision. However, Hochmuth's relationships with Egan and the child, standing alone, are not a sufficient basis upon which to find that more extensive visitation than offered by Egan is in the child's best interests.

¶ 26 A court's decision regarding visitation must be guided by all relevant constitutional and statutory safeguards, not just the relationship of the parties. Hochmuth supports her position only with cases from other jurisdictions, none of which involved the application of an in loco parentis statute similar to Arizona's. The courts in those states relied on *common law* doctrines to confer standing on third parties who had established significant relationships with children and were seeking confirmation of their rights to custody and/or visitation.[12] By contrast, Hoch-

**10.** The presumption is rebuttable. *McGovern*, 201 Ariz. at 177, ¶ 17, 33 P.3d at 511 ("[A] grandparent seeking visitation has the burden of rebutting the presumption that a decision made by a fit parent to deny or limit visitation was made in the child's best interest.").

**11.** The superior court agreed with Hochmuth, stating:

THIS COURT FURTHER finds that grandparent rights are significantly different than the rights that should be afforded a non-biological parent to a child raised by a couple as a child of their relationship. The reasoning behind the grandparent right cases cited by [Egan] is to not interfere with those rights of a parent to raise their child. This matter can be distinguished in many ways from that scenario.

**12.** *See, e.g., E.N.O. v. L.M.M.*, 429 Mass. 824, 711 N.E.2d 886, 890 (1999) (adopting de facto parent doctrine); *V.C. v. M.J.B.*, 163 N.J. 200, 748 A.2d 539, 555 (2000) (affirming visitation order based on psychological parent doctrine); *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 919–20 (2001) (recognizing common law doctrine of in loco parentis); *Middleton v. Johnson*, 369 S.C. 585, 633 S.E.2d 162, 167–70 (App.2006) (recognizing psychological parent doctrine); *In Re Parentage of L.B.*, 155 Wash.2d 679, 122 P.3d 161, 177, ¶ 41 (2005) (holding that Washington's common law de facto parent doctrine granted third-party standing); *In re Custody of H.S.H.-K.*, 193 Wis.2d 649, 533 N.W.2d 419, 439 (1995) (holding that courts can rely on equitable powers to grant third-party visitation); *cf. In re Interest of E.L.M.C.*, 100 P.3d 546, 559–61 (Colo.Ct.App. 2004) (finding that a statutory provision *implicitly* recognized the right of a psychological parent to seek visitation). Courts in other jurisdictions have declined to adopt the common law doctrines that would allow third-party custody or visitation rights. *See, e.g., In re Nelson*, 149 N.H.

muth's standing in the case at bar is uncontested by Egan.

¶ 27 In particular, Hochmuth emphasizes the Washington Supreme Court's decision, *In re Parentage of L.B.*, which recognized the rights of third parties to seek custody/visitation under the de facto parent doctrine. The court addressed the common law doctrine because Washington's statute governing third-party visitation had been declared unconstitutional. 122 P.3d at 166, 179, ¶¶ 13, 49. Thus, the case has little relevance to our interpretation of Arizona's statutory framework for third-party visitation.[13] Moreover, we sharply disagree with the bold pronouncement of the Washington Supreme Court that, if a person can establish standing as a de facto parent, then that person has a fundamental liberty interest in the care, custody, and control of the child, to the same extent as the legal parent. *Id.* at 178, ¶ 45.

¶ 28 Hochmuth's request for visitation is governed by § 25–415(C), as she alleged in her petition. She did not seek visitation under any de facto, psychological, or other equitable parent theory arising under the common law. To the extent she urges us to consider such theories, we find that Arizona has not adopted the de facto parent doctrine or any similar common law doctrine. *See Finck v. O'Toole*, 179 Ariz. 404, 406–07, 880 P.2d 624, 626–27 (1994); *Hughes v. Creighton*, 165 Ariz. 265, 268, 798 P.2d 403, 406 (App.1990) (prior to enactment of § 25–415, holding that a former boyfriend could not seek visitation rights to the child even though he stood in loco parentis).

¶ 29 In *Finck*, our supreme court held that the superior court was not authorized to grant visitation rights to step-grandparents who stood in loco parentis to a child. 179 Ariz. at 407, 880 P.2d at 627. Noting that the legislature had only promulgated procedures for awarding visitation to noncustodial parents, grandparents, and great-grandparents, the court reasoned that the legislature did not intend to authorize visitation for un-

specified third parties. *Id.* "In response to *Finck*, rather than simply adding step-parents and step-grandparents to the classes of parties entitled to petition for visitation, the legislature enacted § 25–415(C) to provide that the court may award reasonable visitation rights to persons standing in loco parentis to a child, including, presumably, stepparents and step-grandparents, subject to satisfaction of the listed requirements." *Riepe*, 208 Ariz. at 95, ¶ 21, 91 P.3d at 317.

¶ 30 Nor does the language or legislative history of § 25–415(C) reflect that the legislature intended to incorporate equitable parenting common law doctrines. The purpose of the statute was to provide a legal avenue for a person to seek custody or visitation with a child, as long as that person meets the jurisdictional requirements and can satisfy the significant burden of establishing that he or she stands in loco parentis to the child. We do not discern any attempt by the legislature to restrict the fit parent presumption in the manner Hochmuth suggests. Because the statutory provision governing visitation is permissive, not mandatory, it supports our conclusion that the nature of the relationship between the parent and the nonparent is but one factor the court should consider. *See* A.R.S. § 25–415(C) ("The superior court may grant a person who stands in loco parentis ... reasonable visitation rights to the child[.]"); *McGovern*, 201 Ariz. at 177, ¶ 15, 33 P.3d at 511 (recognizing the self-limiting features of § 25–409, including the permissive nature of the statute). Thus, we conclude that the legislature did not intend to create an unqualified right to visitation for nonparents and thereby diminish the presumption that a fit parent acts in the best interests of his or her child.

¶ 31 Additionally, we must recognize that Hochmuth is not a "parent" under the domestic relations statutes and thus does not enjoy the same legal rights as Egan. *See Riepe*, 208 Ariz. at 94, ¶ 16, 91 P.3d at 316.

---

545, 825 A.2d 501, 504 (2003); *Jones v. Barlow*, 154 P.3d 808, 815–19, ¶¶ 30–42 (Utah 2007); *Stadter v. Siperko*, 52 Va.App. 81, 661 S.E.2d 494, 498–99 (2008).

13. In Arizona, the superior court's jurisdiction in matters involving custody and visitation is limited to matters provided by statute. A.R.S. § 25–311(A) (2007) ("The superior court is vested with original jurisdiction to hear and decide all matters arising pursuant to this chapter[.]").

Consistent with the constitutional right to parent, the legislature has provided nonparents with fewer rights than parents. For example, a nonparent may seek in loco parentis "visitation," but not "parenting time." In other domestic relations statutes, the term "visitation" was changed to "parenting time" in 2001, but the change was not made in § 25–409 or § 25–415. *See Sheehan v. Flower,* 217 Ariz. 39, 43 n. 7, ¶ 16, 170 P.3d 288, 292 n. 7 (App.2007) (noting that statutory change was made to "reflect a more collaborative approach to parenting children that acknowledge[s] the contributions of both parents.") A noncustodial parent is legally entitled to "reasonable parenting time," but the right of a nonparent to visitation is discretionary with the superior court. *Compare* A.R.S. § 25–408(A) (2007) (parent who is not granted custody is entitled to reasonable parenting time unless the court finds it would seriously endanger the child's physical, mental, moral, or emotional health) *with* A.R.S. § 25–415(C) (superior court *may* grant reasonable visitation rights to in loco parentis parent). Parenting time given to a noncustodial *parent* is "to ensure that the minor child has frequent and continuing contact with the noncustodial parent." A.R.S § 25–408(A). No similar language is found in the grandparent visitation or the in loco parentis visitation statutes. Furthermore, a nonparent is not entitled to advance written notice of a parent's intent to relocate a child outside the state or more than one hundred miles within the state. *Sheehan,* 217 Ariz. at 39, ¶ 1, 170 P.3d at 288 (holding that the procedural rights of § 25–408, including the right to advance notice of the custodial parent's out-of-state relocation, is not applicable to grandparent visitation).

■ ¶ 32 We recognize that Hochmuth has presented evidence of her substantial and continuous relationship with Egan and the child, and Egan consented to and fostered Hochmuth's relationship with the child. These factors, however, do not trump Egan's fundamental right to parent her child. They are relevant in determining the propriety of visitation and its scope, but their existence does not mean Hochmuth is entitled to visitation with the child as a matter of right. Rather, consistent with the express language

of § 25–415(C), as well as the factors set forth in § 25–409(C), a determination regarding visitation by a nonparent must include specific consideration of the child's best interests. *See Downs,* 206 Ariz. at 502, ¶ 26, 80 P.3d at 781 (noting that "the extent of [a] parent's constitutional right can only be determined by weighing that right against countervailing factors, if any, pertaining to the best interests of the child."). In this regard, we find the principles discussed in *Troxel, Dodge, Jackson,* and *McGovern* persuasive in formulating the procedural and evidentiary safeguards courts should follow when considering requests for in loco parentis visitation under § 25–415(C).

### C. Applicability of § 25–409(C) Factors

¶ 33 Egan argues that the superior court should have considered factors listed in § 25–409 prior to awarding visitation. She asserts that because § 25–415(C) refers to § 25–409, the superior court must consider, at a minimum, certain enumerated factors in determining a child's best interests. Egan relies on the express language and punctuation of § 25–415(C): "The superior court may grant a person who stands in loco parentis to a child, including grandparents and great-grandparents, who meet the requirements of § 25–409 reasonable visitation rights[.]" (Underlining added.) According to Egan, if this provision is read as punctuated by the legislature, then all visitation requests under § 25–415(C), not just those relating to grandparents, must be evaluated based on the factors found in § 25–409. Hochmuth counters that § 25–415(C) was incorrectly punctuated and that the comma after "great-grandparents" should have been placed immediately after "who meet the requirements of § 25–409."

■ ¶ 34 When analyzing statutes, we apply "fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

Each word and phrase of the statute "must be given meaning so that no part of it will be void, inert, redundant, or trivial." *Williams v. Thude,* 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997). But if the statutory language is ambiguous, "we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Hughes v. Jorgenson,* 203 Ariz. 71, 73, ¶ 11, 50 P.3d 821, 823 (2002) (citation and internal quotations omitted).

¶ 35 There are legitimate reasons to agree with Hochmuth's interpretation. First, § 25–409 is entitled: "Visitation rights of grandparents and great-grandparents." *See State ex. rel Romley v. Hauser,* 209 Ariz. 539, 542, ¶ 16, 105 P.3d 1158, 1161 (2005) (observing statute headings are not law, but the title may be used to aid in interpretation where ambiguity exists). Second, Arizona courts have consistently characterized § 25–409 as the grandparent visitation statute. *See, e.g., McGovern,* 201 Ariz. at 173, ¶ 1, 33 P.3d at 507; *Jackson,* 199 Ariz. at 308, ¶ 1, 18 P.3d at 102; *Dodge,* 195 Ariz. at 121, ¶ 1, 985 P.2d at 606. Third, subsections (A), (B), (D), and (E) relate only to grandparents and great-grandparents. Thus, a non-grandparent could not qualify under § 25–409's plain language. Incorporating all of § 25–409 into § 25–415(C) in the context of non-grandparents would render these subsections mere surplusage.

¶ 36 On the other hand, construing the statute in the manner suggested by Hochmuth fails to give a fair and logical meaning to the legislature's reference to § 25–409 in § 25–415(C). We must therefore presume that the legislature intended to include the reference to § 25–409 for some meaningful purpose. Limiting the applicability of § 25–409 solely to grandparents and great-grandparents is illogical. What would be the ratio-

nale for subjecting these two classes of individuals to the § 25–409 factors and, at the same time, finding that other groups, such as step-grandparents, are not subject to the § 25–409 factors? We cannot discern any rational reason for drawing such a distinction.[14]

¶ 37 In addition, we presume that when the legislature uses different wording within a statutory scheme, it intends to give a different meaning and consequence to that language. *Comm. for Preservation of Established Neighborhoods v. Riffel,* 213 Ariz. 247, 249–50, ¶ 8, 141 P.3d 422, 424–25 (App.2006). In the case of § 25–409, the legislature used "grandparent" to refer to the party petitioning under the statute in subsections (A), (B), (D), and (E). By contrast, the legislature did not refer to "grandparent" in subsection (C). Instead, subsection (C) uses "person" and "party." This difference provides a reasonable basis to conclude that the legislature intended all persons petitioning under § 25–415(C), even grandparents, to qualify under the factors found in § 25–409(C).

¶ 38 Interpreting § 25–415(C) as suggested by Hochmuth would reduce the safeguards available to Egan simply because the person seeking visitation rights was someone other than a grandparent. We acknowledge that Hochmuth's situation is somewhat unique when compared to other nonparents such as grandparents. It is not difficult to imagine, however, a situation where a grandparent has been substantially involved in raising a child for many years. *See, e.g., Munari v. Hotham,* 217 Ariz. 599, 600, ¶ 2, 177 P.3d 860, 861 (App.2008) (grandparents raised child for the first seven years of his life); *Downs,* 206 Ariz. at 503, ¶ 33, 80 P.3d at 782 (grandparent sought custody/visitation of eleven-year-old grandchild she raised for the majority of the child's life).

¶ 39 In such cases, if the relationship between the legal parent and the grandpar-

<hr/>

14. The legislature presumably referenced grandparents and great-grandparents to clarify that such groups would be able to seek in loco parentis visitation in addition to their rights under § 25–409. Although the alternative avenues to obtaining visitation rights may ultimately yield the same results, grandparents and great-grandparents who have established a "meaningful pa-

rental relationship with the child for a substantial period of time" may desire to have their "in loco parentis" rights confirmed by the superior court under § 25–415(C). *See Downs,* 206 Ariz. at 503, ¶ 33, 80 P.3d at 782 (remanding for consideration of grandparent's visitation request under § 25–415(C) and § 25–409).

ent deteriorates to the point where the legal parent does not want the grandparent involved in the child's life, the grandparent would have the right to seek in loco parentis custody or visitation. The same example could apply to a boyfriend-girlfriend, step-parent, or step-grandparent relationship. We cannot recognize any valid reason, under § 25–415(C), why the nonparent in those scenarios should be treated differently than the nonparent in this case. Thus, while the type of relationship involved is a factor the court may properly consider, the relationship itself does not justify applying a different evidentiary or procedural framework for judging the best interests of the child. *See Jackson*, 199 Ariz. at 312, ¶ 23, 18 P.3d at 106 ("[T]he legislature must act even-handedly when it grants benefits to one group and denies them to another."). Whether the person seeking visitation under in loco parentis status is a grandparent, step-parent, sister, brother, boyfriend, girlfriend, or same-sex partner does not change the statutory mandate that the court consider the best interests of the child, and if visitation is ordered, that it be reasonable.

¶ 40 Interpreting the statute in this manner is also consistent with, and flows naturally from, the constitutional right to parent and the fit parent presumption. *See McGovern*, 201 Ariz. at 178, ¶ 20, 33 P.3d at 512 (recognizing this court's obligation to attempt to give statutes a "reasonable and constitutional meaning"). Moreover, examination of the factors will not unduly restrict a nonparent's statutory right to petition for visitation and will also give necessary deference to a parent's right to raise the child. Critically, the in loco parentis visitation statute requires that visitation be in the best interests of the child. Factors that assist the court in making that determination are entirely consistent with the statute's purpose. We therefore find that the legislature intended that § 25–415(C) read as follows: "The superior court may grant a person who stands in loco parentis to a child, including grandparents and great-grandparents, who meet the requirements of § 25–409 (C) reasonable visitation rights to the child on a finding that the visitation is in the child's best interests[.]" (Underlining and language added.)

¶ 41 Combining the foregoing constitutional and statutory principles, we conclude that a trial court's consideration of a petition for in loco parentis visitation under § 25–415(C) is sound when based on the following procedural and evidentiary safeguards: (1) the court should apply a rebuttable presumption that a fit parent's decision to deny or limit visitation was made in the child's best interests; (2) the court must give "some special weight" to the parent's determination of whether visitation is in the child's best interests and give "significant weight" to the parent's voluntary agreement to permit some visitation; (3) the court must consider the best interests factors listed in § 25–409(C); and (4) the court should take into consideration other relevant best interests factors such as the degree to which the parent has consented to and fostered the nonparent's relationship with the child, including any agreements the parties made as to visitation arrangements. Furthermore, the burden of proof is on the nonparent to rebut the presumption that a fit parent's decision to limit or deny visitation is in the child's best interests.

## D. Court's Visitation Order

¶ 42 We now consider whether the court applied the necessary safeguards in this case. The court provided the reasoning for its decision in part as follows: "Pursuant to *Thomas v. Thomas* ... which is factually very similar to this case, this Court may award reasonable visitation rights to Ms. Hochmuth in accordance with [the child's] best interests. This Court has considerable discretion in awarding visitation."

¶ 43 In *Thomas*, we stated that a trial court has "considerable discretion" in shaping the contours of its custody and visitation orders. 203 Ariz. at 37, ¶ 18, 49 P.3d at 309. That portion of the opinion, however, is dictum because the case did not involve visitation rights. The relevant issues were whether the trial court had jurisdiction and whether it abused its discretion in awarding joint custody under § 25–415(A)(2) and (B). *Id.* at 35, ¶ 1, 49 P.3d at 307. Nonetheless, we agree generally that a trial court has

considerable discretion in shaping a visitation order based on in loco parentis. *Cf. Dodge*, 195 Ariz. at 128, ¶ 38, 985 P.2d 604 (appellate review of grandparent visitation awards are reviewed under substantial evidence and abuse of discretion standards). The language of § 25–415(C), providing that a court may award no visitation or reasonable visitation, contemplates such latitude. The court is not free, however, to simply second-guess the decision of a fit parent as to visitation rights. *Troxel*, 530 U.S. at 73, 120 S.Ct. 2054; *McGovern*, 201 Ariz. at 178, ¶ 19, 33 P.3d at 512.

¶ 44 Nothing in the record suggests that the superior court applied the presumption that Egan acted in the best interests of her child in determining the amount of visitation Hochmuth should receive. Even if the court did apply the presumption, the record does not reflect sufficient evidence to rebut the presumption. There is also no indication that the court applied the factors found in § 25–409(C). Additionally, although the court stated that it was giving some special weight to Egan's visitation proposal, the court's reference was directed only to the proposal submitted after the evidentiary hearing, when the court had already directed the parties to consider which of the equal "parenting time plans" they desired to implement. The court therefore failed to accord *significant* weight to Egan's pre-petition voluntary agreement to allow Hochmuth some visitation. We further note that the superior court awarded visitation significantly in excess of what the parties allegedly agreed to in July 2007, without determining whether such agreement was in the child's best interests. As previously noted, the court should consider the agreement as one of the factors involved in reaching a best interests determination. It is evident that the court gave significant consideration to the extent to which Egan consented to and fostered Hochmuth's relationship with the child; however, Egan's decisions in that regard are but one factor relevant to the best interests inquiry.[15]

¶ 45 Finally, we conclude as a matter of law that the court's temporary order granting equal visitation rights to Hochmuth was not reasonable. The visitation order essentially grants custody rights to Hochmuth because it allows her to direct the upbringing of the child practically to the same extent as Egan. Permitting the order to stand would allow Hochmuth to circumvent the requirements of the statutory provisions governing in loco parentis *custody*, which impose a higher standard of proof than the in loco parentis *visitation* provisions. *See* A.R.S. § 25–415(B) (applying presumption that it is in child's best interests to award custody to the legal parent because of the "physical, psychological and emotional needs of the child to be reared by the child's legal parent" and requiring clear and convincing evidence to rebut the presumption). The legislature intended that courts treat custody and visitation petitions in a different manner, presumably because "granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody, and thus not nearly as invasive of parents' rights." *See Dodge*, 195 Ariz. at 125, ¶ 23, 985 P.2d at 610 (citations and internal quotations omitted); *Downs*, 206 Ariz. at 502 n. 5, ¶ 25, 80 P.3d at 781 n. 5 (recognizing that the demand for visitation in *Troxel* "presumably involved a less intrusive demand upon a fit parent's constitutional right than would a grandparent's demand for custody."). Thus, we conclude that the temporary visitation order granted to Hochmuth constitutes a significantly greater intrusion upon Egan's constitutional right to parent than what the legislature contemplated when it enacted § 25–415(C).[16]

15. The limited record before us indicates that the parties have not fully explored matters relating to the best interests of the child. At the conclusion of the evidentiary hearing, the superior court indicated that motions had been filed regarding a visitation evaluation and appointment of a best interests attorney.

16. Egan suggests that any visitation order imposed under § 25–415 must be "minimally intrusive," which stems from this court's decision in *Dodge* in the context of construing § 25–409. The court did not address, however, the extent to which a parent's right to rear a child outweighs the child's best interests. Further, it is unclear whether the court intended the term "minimally intrusive" to apply to the children, the parents, or both. *See Dodge*, 195 Ariz. at 127–28, ¶¶ 33, 39, 985 P.2d at 612–13 (stating that visitation

**CONCLUSION**

¶ 46 Based on the foregoing, we hold that the superior court erred in awarding Hochmuth equal visitation rights with the child. Accordingly, we vacate the court's October 1, 2008 visitation order and direct the superior court to evaluate Hochmuth's request for visitation consistent with the procedural and evidentiary safeguards set forth herein. Additionally, we vacate the stay order previously issued by this court. Until further order of the superior court, the parties shall abide by the visitation schedule in place immediately prior to the superior court's October 1, 2008 order.

CONCURRING: MARGARET H. DOWNIE, Judge.

BARKER, Judge, specially concurring.

¶ 47 I concur in vacating the order but do so on separate grounds.

¶ 48 The foundational issue here is whether a same-sex partner (Hochmuth), who is not a "legal parent" as defined under A.R.S. § 25–415, can qualify for visitation rights under that same statute when the child's mother (Egan) is a fit parent as defined by law. The parties have stipulated that Hochmuth qualifies. I would reject that stipulation.

¶ 49 Parties have no right to bind the court to a stipulation that defines the law. *Word v. Motorola, Inc.*, 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983) (" 'Parties cannot stipulate as to the law applicable to a given state of facts and bind the court.' " (quoting *State Consol. Publ'g Co. v. Hill*, 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931))). This is particularly true in the area of custody and visitation where the superior court's jurisdiction is expressly limited to that which the legislature permits. *See* A.R.S. § 25–311 (2007) ("The superior court is vested with original jurisdiction to hear and decide all matters arising pursuant to this chapter and pursuant to chapter 4, article 1 of this title."); *Finck v. Superior Court*, 177 Ariz. 417, 421–22, 868 P.2d 1000, 1004–05 (App.1993) ("Before superior court jurisdiction expands in domestic relations actions [regarding] custody or visitation rights ... the legislature must first create those rights ...."), *approved in part sub nom. Finck v. O'Toole*, 179 Ariz. 404, 880 P.2d 624 (1994).

¶ 50 Having rejected the parties' stipulation, I also reject the argument that our current in loco parentis statute gives Hochmuth rights. When we construe statutes, we are to give words their common and ordinary meaning "unless the legislature clearly intended a different meaning." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). The critical passage in the in loco parentis statute is as follows:

"In loco parentis" means a person who has been treated as a *parent* by the child and who has formed a meaningful parental relationship with the child for a substantial period of time.

A.R.S. § 25–415(G)(1) (emphasis added).

¶ 51 At the time of the adoption of the in loco parentis statute, the common and ordinary meaning of the term "parent" under Arizona law was "one who begets or brings forth an offspring ... the natural father and mother." *Sailes v. Jones*, 17 Ariz.App. 593, 596, 499 P.2d 721, 724 (1972); *see Riepe v. Riepe*, 208 Ariz. 90, 100–05, ¶¶ 41–61, 91 P.3d 312, 322–27 (App.2004) (Barker, J., dissenting) (providing extensive authorities showing "Arizona's longstanding, consistent use of the term 'parent' to mean 'one who begets or brings forth an offspring' "). Applying the definition of "parent" that was in place at the time the statute was adopted, "the term 'par-

---

order must be as "minimally intrusive as possible," citing § 25–409(C)(4) ("potential adverse impact that visitation will have on the child's customary activities") and finding that the order imposed by the trial court was "minimally intrusive" on the life of the father and his daughters). In any event, we find it unnecessary to further define the evidentiary and procedural safeguards set forth in this opinion and thus we need not address whether visitation orders under § 25-

415(C) must be "minimally intrusive." *See Downs*, 206 Ariz. at 502, ¶ 25, 80 P.3d at 781 (citing *Troxel*, 530 U.S. at 73, 120 S.Ct. 2054) (recognizing that where a fit parent's right to rear a child "may conflict with the child's best interests, the extent of the parent's constitutional right has not been precisely defined" and under such circumstances, a parent's right is best elaborated "with care").

ent' has number and gender limitations: one man as a father and one woman as a mother." *Riepe*, 208 Ariz. at 117, ¶ 122, 91 P.3d at 339 (Barker, J., dissenting). Within constitutional restraints, the legislature is free to modify that definition and has done so with regard to adoptive parents but has not done so as to same-sex partners. *See* A.R.S. § 25–415(G)(2) (defining "legal parent" as "a biological or adoptive parent whose parental rights have not been terminated"); *Jackson v. Tangreen*, 199 Ariz. 306, 312, ¶ 23, 18 P.3d 100, 106 (App.2000) ("[A]doptive parents' rights exist only because the legislature created them.").

¶ 52 By their stipulation the parties effectively seek to insert a more expansive, definition of "parent" into the statute, one that "unhinges the ties of number and gender that pertain to that term." *Riepe*, 208 Ariz. at 96, ¶ 25, 91 P.3d at 318 (Barker, J., dissenting). A divided three-judge panel from this court has adopted such an expansive definition with regard to a "stepmother" qualifying as a "parent" for in loco parentis rights even though a fully fit and functioning mother was already in place. *Id.* at 93, ¶¶ 10–12, 91 P.3d at 315. As set forth in the dissent, that panel was wrong in its interpretation of the statute, just as the parties here are wrong in their stipulation as to the statute:

> Examining the statute the legislature passed, "the statute's policy," *supra* ¶¶ 67–76, "the evil it was designed to address," *supra* ¶¶ 77–96, "its words," *supra* ¶¶ 41–61, "context," *supra* ¶¶ 67–76, "subject matter," *supra* ¶¶ 62–66, and "effects and consequences," *supra* ¶¶ 97–115, all lead to a conclusion that the legislature did not intend to utilize the alternative definition of the term "parent" that eliminated gender and number limitations. *See Logan,* [*v. Forever Living Prods. Int'l, Inc.*] 203 Ariz. [191] at 194, ¶ 10, 52 P.3d [760] at 763 [(2002)]. This conclusion is strengthened by the presence of very "serious constitutional problems," *see supra* ¶¶ 116–119, if one is to construe the ILP statute with the alternative definition of "parent." If a construction of the term "parent" which is contrary to our existing law is to be given,

> it should be stated directly by the legislature, not announced by the court.

*Id.* at 118, ¶ 125, 91 P.3d at 340 (Barker, J., dissenting).

¶ 53 The question is not the nature of one's views on family structure, which views are many and varied. Nor is the question which relationships the parties or the court choose to accept to qualify one as being a "parent." The question is what did the *legislature* intend and what does our *law* say. Neither the express terms of the in loco parentis statute, nor application of the rules of statutory construction as applied to it, permit the parties to stipulate to (or the court to accept) a definition of parent that "unhinges the ties of number and gender that pertain to that term." *Id.* at 96, ¶ 25, 91 P.3d at 318 (Barker, J., dissenting). As stated above, "[i]f a construction of the term 'parent' which is contrary to our existing law is to be given, it should be stated directly by the legislature, not announced by the court," nor accepted based on a stipulation of the parties. *Id.* at 118, ¶ 125, 91 P.3d at 340 (Barker, J., dissenting).

¶ 54 Additionally, if Hochmuth (or any other non-parent) was statutorily permitted to seek visitation rights under A.R.S. § 25–415(C), the non-parent should be constitutionally required to meet the heightened standard of proof by clear and convincing evidence that the visitation, if any, proposed by Egan (a fit parent) is not reasonable and not in the child's best interest. *See In re B.S.*, 205 Ariz. 611, 615–16, ¶¶ 10–14, 74 P.3d 285, 289–90 (App.2003) (applying a "clear and convincing" standard in a judicial bypass proceeding for a minor's abortion in part because "the judicial bypass procedure impacts a parent's opportunity to participate in making a significant decision involving his or her minor daughter. The Court has recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. In a proceeding that encroaches on a parent's ability to exercise this interest, a heightened standard of proof is warranted.") (citations omitted); *see also Roth v. Weston*, 259 Conn. 202, 789 A.2d 431, 434 (2002) ("We conclude that the statute is unconstitutional as applied to the extent that

244

the trial court, pursuant to the statute, permitted third party visitation contrary to the desires of a fit parent and in the absence of any allegation and proof by clear and convincing evidence that the children would suffer actual, significant harm if deprived of the visitation."); *Stadter v. Siperko,* 52 Va.App. 81, 661 S.E.2d 494, 498 (2008) ("The evidence supporting non-parent visitation must therefore be sufficient to overcome the constitutional concerns inherent in the *Troxel* presumption; a court awarding non-parent visitation over a fit parent's objection based on the child's best interests must first find clear and convincing evidence that a 'denial of visitation would be harmful or detrimental to the welfare of the child.'" (quoting *Williams v. Williams,* 24 Va.App. 778, 485 S.E.2d 651, 654 (1997))). *Contra In re Marriage of Winczewski,* 188 Or.App. 667, 72 P.3d 1012, 1030 (2003) (Deits, C.J., concurring) (finding constitutional a custody and visitation statute that requires only a "preponderance of the evidence" standard for a non-parent to rebut the presumption that the legal parent acts in the best interest of the child).

¶ 55 For these reasons, the trial court's order should be vacated.