366 P.3d 587

Nicole **GOODMAN**, Petitioner/Appellee,

v.

Tashina **FORSEN**, Respondent/Appellant.

No. 1 CA–CV 14–0844 FC.

Court of Appeals of Arizona, Division 1.

Jan. 28, 2016.

Berkshire Law Office, PLLC, By Keith Berkshire, J. Alexander Dattilo, Megan Lankford, Phoenix, Counsel for Respondent/Appellant.

Rubin & Ansel, PLLC, By Yvette D. Ansel, Scottsdale, Counsel for Petitioner/Appellee.

Judge PETER B. SWANN delivered the opinion of the court, in which Presiding Judge KENTON D. JONES and Judge MICHAEL J. BROWN joined.

## OPINION

SWANN, Judge:

¶ 1 In 2013, the legislature amended A.R.S. § 25–409 to require that a court give "special weight" to a parent's decision to oppose visitation between a child and a nonparent. We hold that a parent opposing visitation does not bear the burden of proof under this statute, and that "special weight" means the party seeking visitation must prove that a fit parent's decision to deny visitation would substantially impair the child's best interests.

¶ 2 In this case, the court ordered visitation under A.R.S. § 25–409 in favor of the former girlfriend of a fit mother. Though the court endeavored to apply the "special weight" requirement, we conclude that it misinterpreted the statutory language. The court overrode the mother's opinion because it found that her testimony explaining her reasons for denying visitation was not "credible." While credibility determinations lie within the unique province of the trial court, the credibility of the mother's motivations was not the proper legal focus of the inquiry. By focusing on the mother's personal motivations, the court effectively imposed a burden on her to justify her decision, when the burden should have been on the nonparent to demonstrate why visitation was necessary to protect the child's interests. On this record, the adverse credibility determination should not have resulted in the automatic rejection of the mother's decision to deny visitation. We therefore reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Tashina Forsen ("Mother") gave birth to a daughter ("Child"), out of wedlock, in April 2005. Mother never married Child's father, and his parental rights were eventually severed.

¶ 4 Mother began dating Nicole Goodman in mid–2006, and the couple moved in together in November 2006. With the exception of one or more brief separations, Mother and

Goodman lived together with Child for the next five years. The couple permanently separated in October 2011. For two years after the separation, Mother allowed Goodman to spend time with Child on a regular basis—initially four days a week after school and later, every weekend when Mother's work schedule changed. But in September or October 2013, several months after Mother married her current wife, Mother unilaterally discontinued Goodman's visits with Child. Goodman promptly petitioned for visitation, and the superior court set an evidentiary hearing.

¶ 5 Mother opposed visitation, explaining to a court-appointed parenting-conference provider that Goodman fought with her current girlfriend in front of Child, and the fights upset Child. According to Mother, she and Goodman had mutually engaged in domestic violence during their relationship, and Mother did not want Child to be exposed to similar interactions between Goodman and her girlfriend. The parties agreed that Mother had struck Goodman during a 2008 altercation but disputed whether Goodman had ever struck Mother. Goodman acknowledged that she and her current girlfriend had argued in front of Child, and she stated that she had yelled and slammed a door. Child spontaneously informed the parenting-conference provider that Goodman and her girlfriend "keep fighting over and over again," and reported that Goodman was "really mean" to the girlfriend, "throw[ing] stuff, yell[ing] at her, and slam[ming] stuff." Child told the provider that she would like to visit Goodman if she and Mother did not fight.

¶ 6 Mother also took issue with Goodman's manner of disciplining Child. Though Mother and Goodman had agreed at the outset of their relationship that Goodman would not discipline Child, this changed as their relationship progressed. Goodman acknowledged that she had spanked Child as a form of discipline. According to Mother, she had asked Goodman not to spank Child, and she felt that Goodman spanked Child too hard. Mother further testified that Goodman had pinched Child's arm and struck her face.

¶ 7 The court concluded that Goodman was entitled to visitation under A.R.S. § 25–409(C)(2) and (E). In determining that visitation was in Child's best interests, the court examined the factors enumerated in § 25–409(E), and made extensive findings. The court found, *inter alia*, that Goodman had an *in loco parentis* relationship with Child and that Goodman was seeking visitation because she loved Child and Child loved her. We do not question these findings. The court also found that Mother's testimony regarding domestic violence and physical discipline was not a credible basis for opposing visitation, and that Mother's true motivation in opposing visitation was her desire to replace Goodman in Child's life with her wife. The court stated that though it had given "special weight" to Mother's opinion as to whether visitation with Goodman would serve Child's best interests as required by § 25–409(E), Goodman's evidence was more credible than Mother's, and Goodman had rebutted a "presumption" that visitation was not in Child's best interests. The court awarded visitation starting at five hours each month and gradually increasing to one day and night each month. The court ordered that Goodman's girlfriend could not be present during the visits.

¶ 8 Mother timely appeals.

## DISCUSSION

¶ 9 A.R.S. § 25–409(C)(2) provides that the court may award visitation to any "person other than a legal parent" if "[t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed." Since January 2013, § 25–409(E) has required that the court consider relevant best-interests factors *and* give "special weight" to legal parents' visitation decisions:

In deciding whether to grant visitation to a third party, the court shall give *special weight* to the legal parents' opinion of what serves their child's best interests and consider all relevant factors including:

1. The historical relationship, if any, between the child and the person seeking visitation.

2. The motivation of the requesting party seeking visitation.

3. The motivation of the person objecting to visitation.

4. The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.

5. If one or both of the child's parents are deceased, the benefit in maintaining an extended family relationship.

A.R.S. § 25–409(E) (emphasis added); *compare* 2003 Ariz. Sess. Laws, ch. 89, § 1 (1st Reg. Sess.) *with* 2012 Ariz. Sess. Laws, ch. 309, §§ 19, 20 (2d Reg. Sess.). We agree with the court that Goodman was eligible for nonparent visitation with Child under § 25–409(C)(2). But we agree with Mother that the court misapplied the law in determining Child's best interests under the standard prescribed by § 25–409(E).

¶ 10 In *Troxel v. Granville*, a plurality of the Supreme Court held that a court "must accord at least some special weight to the parent's own determination" of whether the parent's child would benefit from visitation with a grandparent. 530 U.S. 57, 70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). The plurality explained that "there is a presumption that fit parents act in the best interests of their children," in accord with parents' "fundamental constitutional right to make decisions concerning the rearing of [their] own [children]." *Id.* at 68, 70, 120 S.Ct. 2054 (plurality opinion). The plurality held that a court cannot interfere with a fit parent's visitation decisions based on "mere disagreement" with those decisions. *See id.* at 68, 120 S.Ct. 2054 (plurality opinion). To serve this purpose and "alleviate[ ] any constitutional concerns in applying [A.R.S. § 25–409]," this court, in *McGovern v. McGovern*, superimposed *Troxel*'s evidentiary principles on the pre–2013 version of the statute. 201 Ariz. 172, 177–178, ¶¶ 17–20, 33 P.3d 506 (App.2011).

¶ 11 "Special weight" was not defined in *Troxel, see* 530 U.S. at 68, 70, 120 S.Ct. 2054, or in *McGovern, see* 201 Ariz. at 178, ¶ 18, 33 P.3d 506; nor did the legislature define "special weight" when it amended the statute to add the term, *see* A.R.S. § 25–409. When *McGovern* interpreted *Troxel,* it held that the term was subject to "development on a case-by-case basis." 201 Ariz. at 178, ¶ 18, 33 P.3d 506 (citation omitted). In the wake of *Troxel,* courts in other jurisdictions have held that "special weight" requires the court to accord substantial deference to fit parents' views. For example, the Ohio Court of Appeals has interpreted "special weight" to mean "extreme deference" that "will be overcome only by some compelling governmental interest and overwhelmingly clear circumstances supporting that governmental interest." *Oliver v. Feldner,* 149 Ohio App.3d 114, 776 N.E.2d 499, 508, ¶ 59 (2002). Similarly, the Colorado Court of Appeals has described a "presumption [that] could only be rebutted by clear and convincing evidence that the parent is unfit to make the visitation decision or the parent's visitation decision is not in the child's best interests." *In re C.T.G.,* 179 P.3d 213, 223 (Colo.App.2007).

¶ 12 Though we agree with the overall thrust of these holdings, we decline to adopt their language. In our view, *Oliver's* "extreme" deference standard is an overstatement of the meaning of the term "special weight." We disagree with *Oliver's* holding that constitutional strict scrutiny applies to the visitation decision—that standard was not adopted by the *Troxel* plurality. And the *C.T.G.* standard creates a formal presumption and burden of proof under Colorado law that our legislature has not enacted. Though we do not adopt the *C.T.G.* formulation literally, however, it is based on the same considerations that guide our decision in this case.

¶ 13 Our interpretation of A.R.S. § 25–409(E) recognizes that the "special weight" requirement demands robust deference to fit parents' opinions concerning their children's best interests. "Consistent with the constitutional right to parent, the legislature has provided nonparents with fewer rights than parents." *Egan v. Fridlund–Horne,* 221 Ariz. 229, 238, ¶ 31, 211 P.3d 1213 (App.2009). Assuming parental fitness, the analysis required under § 25–409 is not a typical balancing test in which the court's own determination of best interests is controlling—we interpret "special weight" to mean that the parents' determination is controlling unless a parental decision clearly and substantially impairs a child's best interests.

Even if arbitrary, the parents' determination is the primary factor in the analysis, and the burden is on the person seeking visitation to demonstrate that denial of visitation would clearly and substantially impair the child's interests.

¶ 14 That is not to say that a fit parent's decision must always be upheld. *See Mc-Govern*, 201 Ariz. at 178, ¶ 19, 33 P.3d 506 (holding that the evidentiary principles announced by the *Troxel* plurality "*affect but do not necessarily control* a trial court's determinations of 'best interests of the child'") (citation omitted) (emphasis added); *see also In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20, 31 (2015) ("[T]he pronouncements of *Troxel* do not predispose every case to an ultimate determination favoring the natural parent in a complete and conclusive manner. An assessment of the specific circumstances of each case is still required ..."); *Williams v. Williams*, 132 N.M. 445, 50 P.3d 194, 199 (App.2002) ("[W]e do not read *Troxel* as giving parents the ultimate veto on visitation in every instance. *Troxel* may have altered, but it did not eradicate, the kind of balancing process that normally occurs in visitation decisions."). For example, in some circumstances an order authorizing visitation may be needed to protect the child from incurring harm, including emotional harm caused by isolation from a de facto parent. *Oliver*, 776 N.E.2d at 508, ¶¶ 60–62. But a nonparent who seeks visitation carries a substantial burden to prove that the parent's decision is harmful. It is not enough merely to show that the nonparent stands *in loco parentis* to the child. *See Egan*, 221 Ariz. at 238, ¶ 32, 211 P.3d 1213. Nor is it enough merely to show that a reasonable person could disagree with the parent's decision to deny visitation. *See Troxel*, 530 U.S. at 68, 120 S.Ct. 2054 (plurality opinion). The court's role is not to engineer what it perceives to be the optimal situation for the child, but to determine whether compelling circumstances warrant state interference with a fit parent's decisions. The nonparent must prove that the child's best interests will be substantially harmed absent judicial intervention.

■ ¶ 15 Here, the court made extensive findings regarding Child's best interests. But on this record, the court's rejection of Mother's opinion, where Mother was undisputedly a fit parent, demonstrates that it placed a burden on Mother that the statute does not allow.

¶ 16 The court explained its view of the burden of proof twice, first informing the parties that it "expect[ed] [Mother's counsel] to present evidence as to why it would be contrary to Child's best interests to have some kind of visitation with Ms. Goodman." The court then reformulated the burden:

> "I didn't mean to say it exactly like that.... I'm not putting the burden on [Mother]. I'm just saying you'll need to explain to me. I don't think it's enough for a parent to say, 'It's not in my child's best interests not to have visitation.' I need to have some explanation of that. That's all I meant is I don't want a conclusory statement. I want to understand the basis for [M]other's opinion."

Neither of these formulations was consistent with the meaning of "special weight" under the statute.

¶ 17 Moreover, notwithstanding the court's credibility determination, Mother's concerns were not plainly contrary to the undisputed evidence. Undisputed evidence established that even if Mother's descriptions of Goodman's comportment were exaggerated, Goodman had, at a minimum, spanked Child over Mother's objection and exposed Child to Goodman's interpersonal conflicts.[1] Courts should be especially reluctant to expose children to the risk of physical discipline by third parties over a parent's objection. Mother's concerns about Goodman's tendency to expose Child to fighting were consistent with Child's own report that she would like to visit Goodman only if Goodman and Mother could refrain from fighting. Further, while we defer to the court's determination that Mother's true motivation was to replace Goodman with Mother's new wife, such a motivation does not warrant judicial interference with Mother's child-rearing decisions.

¶ 18 Though the court carefully considered many appropriate factors, it erred by dis-

---

1. Consistent with the evidence regarding Goodman's conflicts with her girlfriend, the court ordered that the girlfriend could not be present during Goodman's visits with Child.

counting Mother's opinion. We therefore reverse, and remand to permit the court to reweigh the evidence under the test articulated above. Because we reverse the court's visitation order as a misapplication of A.R.S. § 25–409(E), we do not address the merits of Mother's contention that the visitation award included unconstitutional prior restraints.[2]

## CONCLUSION

¶ 19 We reverse and remand for proceedings consistent with this decision. We deny both parties' requests for attorney's fees on appeal under A.R.S. § 25–324. Mother is entitled to an award of costs upon compliance with ARCAP 21.

---

**2.** In its visitation order, the court imposed a number of restrictions on Mother's communication with Child concerning the case and Goodman. We agree with Mother that any order restraining speech is constitutionally suspect, but note that we have recognized that the court may regulate disparaging comments by a parent to a child. *Nash v. Nash*, 232 Ariz. 473, 482, ¶ 33, 307 P.3d 40 (App.2013). Mother relies heavily on *Graville v. Dodge*, 195 Ariz. 119, 128, ¶¶ 40–42, 985 P.2d 604 (App.1999), for the proposition that the court's speech-oriented orders constitute prior restraints. We point out simply that *Graville* struck certain orders as undue impingements on the constitutional right to parent, and its holding was not premised on the First Amendment.