NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERTO GONZALEZ, JR.,
*Petitioner/Appellee,*

*v.*

ANGELICA GARCIA MORAGA,
*Respondent/Appellee.*

SEBASTIAN ALBA, et al.,
*Intervenors/Appellants.*

No. 1 CA-CV 18-0298 FC
FILED 2-28-2019

Appeal from the Superior Court in Maricopa County
No.  FC2009-007103
FC2010-000644
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Cosmas Onyia, PC, Phoenix
By Cosmas Onyia
*Counsel for Petitioner/Appellee*

Alongi Law Firm, PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Intervenors/Appellants*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1      Sandra Moraga and Sebastian Alba (collectively, "Grandparents") appeal the superior court order dismissing their petition for third-party rights as to their grandson ("Child") pursuant to Arizona Revised Statutes ("A.R.S.") section 25-409 (2019).[1]  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2      Child was born in 2009; the following year, the family division of the superior court granted Angelica Garcia Moraga ("Mother") sole legal custody and granted parenting time to Roberto Gonzalez, Jr. ("Father").  In October 2017, Mother was killed.  Several days after she died, and unbeknownst to Father, Grandparents commenced an action in the juvenile division of the superior court and obtained a temporary guardianship order over Child.

¶3      Father then filed a motion in the family-division case seeking a temporary order modifying legal decision-making, physical custody and parenting time.  His motion alleged Mother had died, Child was with Grandparents and they refused to relinquish him to Father.  The superior court denied the motion, citing only Mother's death.  The court later explained that "[u]pon the death of Mother, Father was the only living parent and the only remaining person who had parental rights over this Child."  Thus, the court continued, "with Mother deceased, there was no case to adjudicate."

¶4      On January 4, 2018, Father filed an amended motion in the family case to modify custody.  The court held a return hearing the next month, at which Grandparents served Father with a Petition to Intervene under § 25-409(A).  In their petition, Grandparents alleged they stood *in loco*

---

[1]      Absent material revision after the relevant date, we cite the current version of a statute or rule.

*parentis* to Child. They further alleged that placing Child with Father would be significantly detrimental to Child because Father had a history of domestic violence. Grandparents asked the court to grant them legal decision-making authority and physical custody of Child.

¶5        At a hearing in March 2018, the court heard testimony from Father, Moraga and Child's counselor, then invited and received an additional affidavit from Moraga, along with supplemental briefs.

¶6        Moraga's affidavit stated:

> 1. . . . [Child] has been a close member of our family since the day he was born, eight years ago yesterday. [Child and Mother] both lived with us for the first month of his life. During this time, my husband and I helped feed, bathe, and change [Child]. . . . Before my daughter's murder, [Child] spent a significant amount of time at our house. . . . He loved spending the weekends and school breaks at our house. . . .

> 2. Since the day my daughter lost her life, [Child] has lived with us and his two younger siblings. We have taken on the full time parenting roles for the past 5 and a half months. . . . While [Child] understands we can never replace his mother, he now looks to us in the same way he looked to his mother for love, protection, guidance, and support. In addition to providing all of his basic needs, such as home-cooked meals, shelter, and clothing, we also provide the emotional support and close family relationships he needs to grieve over the loss of his mother and adjust to a life without her.

¶7        In a 10-page order, the superior court dismissed Grandparents' petition for third-party rights and ordered them to immediately turn over Child to Father. Although it dismissed Grandparents' petition, the court remarked that "Child clearly has a close and loving bond with" Grandparents and stated that it appeared "that the Child should clearly have time with the Grandparents" under § 25-409(E) (third-party visitation).

¶8        Grandparents timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(3) (2019).

**DISCUSSION**

**¶9**         We review *de novo* the superior court's interpretation and application of § 25-409. *Chapman v. Hopkins*, 243 Ariz. 236, 240, ¶ 14 (App. 2017). We will affirm the court's factual findings unless they are clearly erroneous. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51-52, ¶ 11 (App. 2009). A finding of fact is not clearly erroneous if substantial evidence supports it – even if substantial conflicting evidence exists – giving due regard to the opportunity of the superior court to judge the credibility of the evidence. *Id.*

**¶10**         Under § 25-409(A), "a person other than a legal parent" may petition for legal decision-making or placement of a child. *See also* A.R.S. § 25-402 (2019) (court has jurisdiction to rule on petition filed by nonparent). The court must summarily deny such a petition unless it finds the petition "establishes" that: (1) the petitioners stand *in loco parentis* to the child, (2) allowing the child to remain in the care of a legal parent who wishes to keep decision-making authority would be significantly detrimental to the child, (3) no court of competent jurisdiction has entered orders of legal decision-making or parenting time within the preceding year, and as relevant here, (4) one of the legal parents is deceased. A.R.S. § 25-409(A). The petition must be supported by an affidavit containing detailed facts supporting the specific claims. A.R.S. § 25-409(D).

**¶11**         In *Chapman*, we explained that a petition "establishes" the elements of A.R.S. § 25-409(A) when it contains "sufficient *allegations . . .* that the statutory elements exist, not proof of those elements." 243 Ariz. at 242, ¶ 21, n.2. In its order, the superior court concluded that Grandparents' initial petition was "clearly insufficient" because it made "only a conclusory allegation that the Grandparents stand *in loco parentis*." But the court did not rule based solely on the petition; as noted, it heard testimony at an evidentiary hearing and allowed Grandparents to file a supplemental brief, along with a supplemental affidavit, to establish their claim. In its under-advisement ruling, the court concluded: "Even if all of that evidence were incorporated into an amended pleading, they have not adequately pled a plausible claim for *in loco parentis*."

**¶12**         Grandparents argue the superior court erred in "summarily striking their pleadings" because they established that they stand *in loco parentis* to Child and therefore are entitled to a trial on the merits of their petition. But the court did not summarily strike Grandparents' pleadings. It did not strike any pleadings. It ruled only after taking evidence at a

hearing and allowing Grandparents to submit supplemental evidence and briefing and after considering all the materials before it.

¶13        Turning to the merits of the superior court's order, at issue before that court were the requirements of § 25-409(A)(1) and (A)(2), which require a petitioner to show both that he or she stands *in loco parentis* to the child and that allowing the child to remain in the care of the child's legal parent would be significantly detrimental to the child.

¶14        A person stands *in loco parentis* if a child has treated that person "as a parent" and the person "has formed a meaningful parental relationship with [the] child for a substantial period of time."  A.R.S. § 25-401(1) (2019).  For example, in *Chapman*, the grandparents stood *in loco parentis* because they "had provided 'what amounted to almost daily care' of all the children even before [the grandsons] moved in with them" four months before the petition was filed.  243 Ariz. at 238, ¶ 4-6, 242, ¶ 22.  In that case, after the children moved in with their grandparents, "[the] [m]other and her sons did not have much of a relationship and any conversations they did have grew increasingly hostile," to the point that one of the children testified that he would "absolutely never come home" as long as the mother lived with her boyfriend.  *Id.* at 238, ¶ 6.  We concluded "the children looked to [the] [g]randparents to help provide for their basic needs when they felt that [the] [m]other could not."  *Id.* at 242, ¶ 22.  Further the grandparents had "helped raise [the children] from the time of their births." *Id.  See also Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 48-49, ¶¶ 5-11 (App. 2013) (foster parents stood *in loco parentis* and were allowed to intervene in dependency hearing under predecessor to § 25-409 because they cared for the children for 20 months while the children's mother struggled with drugs and their father was incarcerated in another state); *Egan v. Fridlund-Horne*, 221 Ariz. 229, 231, ¶ 2 (App. 2009) (partner in a same-sex relationship who jointly raised a child for seven years with the mother stood *in loco parentis* under § 25-409).

¶15        Here, the superior court did not err by concluding Grandparents failed to establish that they stood *in loco parentis* before Mother's death in October 2017.  Although Moraga stated in her affidavit that Child "spent a significant amount of time at [Grandparents'] house" before Mother died, she testified Child lived full time with Mother in a separate home for the two years before Mother died.  In fact, the only time before October 2017 that Moraga described Child living in their home was during the month just after Child was born.  Although Moraga testified that Child spent weekends and school breaks at their home while Mother was alive, Grandparents neither alleged nor offered evidence that they were

actively involved in parenting Child before Mother's death. Instead, as the superior court found, "they had a more or less typical, loving grandparent relationship with the Child." Thus, unlike the grandparents in *Chapman*, who provided "almost daily care" of the children and who housed the grandsons full time even while the mother was available to parent, *see* 243 Ariz. at 242, ¶ 22, Grandparents in this case began housing and caring for Child full time only after Mother died.

¶16 Further, although Child may have been in the sole care of Grandparents during the four months between Mother's death and the filing of Grandparents' petition, the superior court did not err by concluding that period did not constitute a "substantial period of time" under the circumstances. *See* A.R.S. § 25-401(1); *Roberto F.*, 232 Ariz. at 48, ¶¶ 5-10 (foster parents raised children for 20 months); *Egan*, 221 Ariz. at 231, ¶ 2 (party co-parented for seven years). Grandparents argue the four-month period in which they cared for Child before they filed their petition was similar to that in *Chapman*, but the facts of the two cases are significantly different. *See* 243 Ariz. at 238-39, ¶¶ 3-8. In *Chapman*, the evidence showed that the mother was not "of sound mind" for more than three years before the grandsons moved in with the grandparents, and that the grandparents provided "almost daily care" for their grandsons long before the children moved in with them. *Id.* at 239, ¶¶ 9-11, 242, ¶ 22. By contrast, here, Grandparents did not allege or offer proof that before she died, Mother was unable to care for Child or that Child looked to Grandparents for daily care.

¶17 Moreover, in considering the period that Grandparents cared for Child after Mother's death, the superior court noted that period of time was extended over Father's "strenuous objection" and continued only because of delays in scheduling court proceedings. As described above, Father moved to assert his parental rights to Child immediately after Mother's death in October. After he filed another motion, the return hearing was not set until February, at which time Grandparents moved for third-party rights. In the meantime, having obtained guardianship of Child without giving notice to Father, Grandparents housed and cared for Child until the court finally ruled in March. As the superior court observed,

> The point to be made here . . . is that Father tried to do everything he could here to adjudicate his rights. . . . If the rights of the parties were promptly adjudicated, then it is clear that an *in loco parentis* relationship did not exist for a substantial period of time. Father should not be penalized by this delay.

**¶18** The record supports the reasoning of the superior court. Grandparents neither pled nor offered facts sufficient to support their assertion that they stood *in loco parentis* to Child. Section 25-409(A) requires parties such as Grandparents to satisfy each of the four elements specified in (A)(1) through (A)(4). Because Grandparents' claim failed under § 25-409(A)(1), we need not address the court's conclusion that Grandparents also failed to adequately allege or show that allowing Child to remain in Father's care would be significantly detrimental to Child under § 25-409(A)(2). For the same reason, we need not address Grandparents' argument that the court should have considered A.R.S. § 25-403.03 in deciding whether allowing Child to remain in Father's care would be significantly detrimental to Child.

## CONCLUSION

**¶19** For the foregoing reasons, we affirm. In the exercise of our discretion, we decline to award attorney's fees on appeal. Father is entitled to his costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:  AA