NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

FRANK TURFLER and SHERRY TURFLER, *Petitioners/Appellants*,

*v.*

MEGAN MARIE TORREZ, *Respondent/Appellee,*

and

JOSEPH HOLLISTER, *Respondent/Appellee.*

No. 1 CA-CV 20-0647 FC
FILED 8-24-2021

Appeal from the Superior Court in Maricopa County
No. FC 2020-050135
The Honorable Alison Bachus, Judge

**AFFIRMED IN PART;VACATED IN PART; REMANDED**

COUNSEL

State 48 Law Firm, Scottsdale
By Jillian Hansen, Ankita Gupta, Robert Hendricks, Stephen Vincent
*Counsel for Petitioners/Appellants*

Cordell Law LLP, Scottsdale
By Kristina Cervone
*Counsel for Respondent/Appellee, Megan Marie Torrez*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1    Frank and Sherry Turfler ("Petitioners") appeal the superior court's ruling on their third-party petition relating to C.H., who was born in 2007. They challenge the court's denial of their requests for legal decision-making and placement, as well as the court's decision to limit their visitation with C.H. to one day per month. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

¶2    C.H.'s mother, Megan Marie Torrez ("Mother"), and his father, Joseph Hollister ("Father"), were never married. Until these proceedings began Father was not involved in C.H.'s life.

¶3    Petitioners are not biologically related to C.H., but they claim they have been "intricately involved" in his life, as both he and Mother "resided in [Petitioners'] home from approximately 2007 to 2016." Mother disputes Petitioners' description of the relationship, asserting they "greatly exaggerated their role" in C.H.'s life. According to Mother, she and C.H. only lived with Petitioners "on-and-off between the years of 2008 and 2015, and the off periods were substantial in nature."

¶4    C.H. has various behavioral issues and has had problems at home and in school. He was admitted to inpatient treatment in August 2019. The next month, Mother signed a six-month power of attorney, delegating parental powers to Mrs. Turfler, and C.H. began living full-time with Petitioners. Petitioners believed this would be a permanent arrangement. But according to Mother, she made the temporary delegation to Petitioners because C.H.'s therapist suggested a "temporary change of scenery" could help C.H. adjust to his new medication, so she allowed him to be enrolled in a school in Petitioners' district.

¶5    On December 24, 2019, however, Mother picked up C.H. from Petitioners' home and told them he would not be returning to their

2

residence. C.H. did not return to Petitioners' home from that point. The next day, he was again admitted to inpatient treatment.

¶6 Shortly thereafter, Petitioners petitioned for legal decision-making and placement/visitation rights over C.H., and also moved for temporary orders. Petitioners alleged that Mother could not care for C.H., did not provide appropriate medical treatment or maintain his medication, and subjected him to unnecessary inpatient treatment "to be rid of him." They also contended Mother has unaddressed mental health issues and will not seek proper treatment.

¶7 Mother, on the other hand, asserted that she provided appropriate care for C.H., and that based on the advice of medical professionals she approved his periods of inpatient treatment. She also denied having declining mental health issues. In addition, in light of C.H.'s behavioral health, she expressed concerns about Petitioners' care of C.H., arguing they offer a less structured, more indulgent environment, and they undermine her parenting by encouraging secret communications. After a temporary orders hearing, the court denied the motion for legal decision-making and placement, but permitted Petitioners to have visitation on the first Saturday of every month.

¶8 The superior court appointed a best interests attorney ("BIA"), who conducted an investigation, including interviews with Petitioners, Mother, Father, and C.H. The BIA filed a pretrial statement summarizing her investigation and ultimately recommending that Mother should retain legal decision-making and placement, but that C.H. should have a "significant relationship" with Petitioners, including visitation on weekends, holidays, and summer break. C.H. told the BIA he would like to stay with Petitioners.

¶9 Mother and Sherry Turfler testified at trial. The superior court then affirmed its prior ruling that Petitioners stood in loco parentis to C.H., which neither party disputed. Next, the court looked to the best interests factors listed in A.R.S. § 25-403(A) and found that Mother's mental health issues did not prohibit her from parenting effectively, and that no credible evidence showed Mother is failing to address C.H.'s mental or physical health. After summarizing the evidence in detail, the court denied Petitioners' request for legal decision-making and placement and granted visitation for eight hours on the first Sunday of every month. The court awarded $1,500 in attorneys' fees and costs to Mother, finding in part that Petitioners acted unreasonably in the proceedings by discussing the

3

litigation with C.H. during visitation. Petitioners timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

**¶10** We review the superior court's interpretation and application of A.R.S. § 25-409 de novo. *Chapman v. Hopkins*, 243 Ariz. 236, 240, ¶ 14 (App. 2017). In addition, we review a decision on child custody matters for an abuse of discretion. *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 3 (App. 2002). We will sustain the court's findings on appeal if they are supported by substantial evidence. *Graville v. Dodge*, 195 Ariz. 119, 129, ¶ 44 (App. 1999). Finally, we review the court's award of attorneys' fees for an abuse of discretion. *Id*. at 131, ¶ 56.

**¶11** Before turning to the merits of the appeal, we address Mother's argument that Petitioners failed to comply with certain briefing requirements, ARCAP 13, by failing to include (1) record cites in their Statement of the Case and (2) pincites in their Statement of Facts. Mother also argues Petitioners presented issues that did not align with their arguments. As such, she asks us to impose sanctions under ARCAP 25. Though Petitioners should have been more thorough with their record citations and more precise with their arguments, we decline to impose a sanction because the errors did not significantly impair Mother's ability to prepare her answering brief, and more importantly, "because a child's best interests are involved." *See Diezsi*, 201 Ariz. at 525, ¶ 2. Moreover, Mother's brief itself is not a model of appellate advocacy. Her decision to include a 18-page block quote from the superior court's ruling is unhelpful, and she failed to address several points Petitioners have raised. Regardless of either party's briefing deficiencies, we consider the issues presented based on our own review of the law and the appellate record.

## I. Legal Decision-Making and Placement

### A. A.R.S. § 25-409(A)

**¶12** Petitioners argue the superior court erred in failing to engage in a full analysis of A.R.S. § 25-409(A). Although we do not understand why this argument is included in Petitioners' briefing, given that the superior court found that they stand in loco parentis to C.H., we briefly address the issue.

**¶13** Section 25-409(A) permits a third party to petition for legal decision-making authority and placement of a child. It operates as a threshold standing requirement at the pleading stage, which the petitioner

must satisfy before the court will analyze his petition on the merits under § 25-409(B). *See Chapman*, 243 Ariz. at 240, ¶¶ 15–17. The petition need only set forth "sufficient *allegations* . . . that the statutory elements exist, not proof of those elements," and the facts alleged in the petition need not be "uncontroverted." *Id.* at 242–23, ¶¶ 21 n.2, 24. Here, after receiving Petitioners' petition, the court scheduled a temporary orders hearing—and later, a full trial—rather than summarily dismissing it. We therefore presume the court analyzed the petition, found sufficient allegations under § 25-409(A), and proceeded to the § 25-409(B) stage of the proceedings.

### B.    A.R.S. § 25-409(B)

**¶14**        Petitioners argue the superior court erred in conducting its analysis under A.R.S. § 25-409(B). We agree. Section 25-409(B) establishes a "rebuttable presumption that awarding legal decision-making to a legal parent serves the child's best interests." A third party may rebut this presumption if he can show "by clear and convincing evidence that awarding legal decision-making to a legal parent is not consistent with the child's best interests." *Id.* To determine a child's best interests, the court "shall consider all factors that are relevant to the child's physical and emotional well-being," including the 11 factors enumerated in § 25-403(A). The court is required to "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." § 25-403(B).

**¶15**        First, the court erred in denying Petitioners' request for legal decision-making because it applied an incorrect legal standard. The court held: "Petitioners have not established by clear and convincing evidence that based on their *in loco parentis* status, it is in the Child's best interest that they be awarded sole legal decision-making authority." However, Petitioners' burden under § 25-409(B) was to rebut the presumption that awarding legal decision-making to Mother was in C.H.'s best interests, not to affirmatively prove that it was in C.H.'s best interests for Petitioners to be awarded legal decision-making authority.

**¶16**        In addition, the court's best interests findings regarding legal decision-making, as required by § 25-403(B), are inadequate. Though the court listed the § 25-403(A) factors and provided related facts for each of them, it did not explain the "reasons for which the decision is in the best interests of the child," § 25-403(B). *See Downs v. Scheffler*, 206 Ariz. 496, 499, ¶ 9 (App. 2003) ("[A] custody decision without the specific findings required by § 25-403 is deficient and, as a matter of law, constitutes an abuse of . . . discretion."). Without more detailed findings, we "cannot ascertain

. . . how the court weighed the statutory factors to arrive at its conclusion" and we are "deprived . . . of a meaningful opportunity to assess the family court's best interests finding." *Reid v. Reid*, 222 Ariz. 204, 207, ¶¶ 13, 20 (App. 2009).

**¶17** Here, despite its extensive recitation of facts and evidence, the court did not explain how it weighed the factors to arrive at its conclusion. In its analysis of the § 25-403(A) factors, many of the facts supported both Mother's and Petitioners' positions. *See Owen v. Blackhawk*, 206 Ariz. 418, 421–22, ¶ 12 (App. 2003) (remanding for further findings where court made detailed findings that "do not favor either parent"). The court also briefly referenced the BIA's pretrial statement, but failed to offer any explanation for either agreeing or disagreeing with the BIA's summary or recommendations. Nor can we tell whether the court placed too much weight on a single factor. *See Reid*, 222 Ariz. at 207, ¶ 13 ("Without further explanation," the appellate court "cannot say that the trial court did not focus too much attention on [one factor] to the exclusion of other relevant considerations.") (quotation and citation omitted). For instance, several times the court mentioned Mother's allegation that Petitioners had discussed the pending litigation with C.H., which is significant because the evidence on that point was disputed.

**¶18** Second, the court erred in failing to consider Petitioners' request for placement.[1] The court conducted a thorough analysis regarding legal decision-making, but did not make findings, conduct analysis, or mention "placement" in its ruling, apart from a few non-substantive references to "parenting time." We will not presume the court's legal decision-making analysis was intended to extend to the issue of placement without any evidence to support that inference. Therefore, we vacate the provisions of the order regarding legal decision-making and placement, and remand for the court to apply the proper standards and to explain its reasoning on the record in compliance with § 25-403(B).

---

[1] The record indicates the parties treated "placement" as a separate issue, and thus the superior court should have resolved it. Although "placement" as used in § 25-409(B) is not defined by statute, *see* A.R.S. § 25-401, we will not attempt to discern its application or meaning without a fully-developed record, which must include the superior court's analysis of whether Petitioners met their burden of proving C.H. should have been placed with them.

## II.   Visitation

**¶19**         Petitioners argue the superior court erred in issuing its visitation ruling.[2]  A third party may petition the court for visitation rights, defined as the "schedule of time" spent with a child by "someone other than a legal parent."  A.R.S. §§ 25-401(7), -409(C).  The court may grant visitation "on a finding that [it] is in the child's best interests" and that "[t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed." § 25-409(C)(2).

**¶20**         "In deciding whether to grant visitation, the court . . . shall give special weight to the legal parent's opinion." § 25-409(E).  Fit parents are entitled to a rebuttable presumption that they act in their "child's best interest in [making] decisions concerning . . . visitation."  *McGovern v. McGovern*, 201 Ariz. 172, 177, ¶ 17 (App. 2001) (citing *Troxel v. Granville*, 530 U.S. 57, 68–69 (2000)).  For special weight to be given to a parent's opinion, he or she need only be a legal parent, not a custodial parent or in any way a "model parent[]."  *In re Marriage of Friedman*, 244 Ariz. 111, 119, ¶¶ 30–31 (2018); *see* § 25-401(4) (defining "[l]egal parent" as a "biological . . . parent whose parental rights have not been terminated"); *Ward v. Ward*, 88 Ariz. 130, 139 (1960) (finding parent is presumed to be fit if no adjudication of unfitness).  If parents disagree, both "opinions are entitled to special weight" and "the parents' conflicting opinions must give way to the court's finding on whether visitation is in the child's best interests."  *Friedman*, 244 Ariz. at 113, ¶ 1.

**¶21**         The court applied the wrong standard in deciding the extent to which Petitioners could exercise visitation with C.H.  In its ruling, the court explained it "considered all relevant factors regarding the Child's best

---

[2]      Mother argues Petitioners failed to properly plead visitation in their original petition.  In their petition, Petitioners requested sole legal decision-making and primary care or "[p]arenting [t]ime," and suggested Mother could have visitation with C.H.  Following the temporary orders hearing, the superior court noted that because placement was not ordered for the third party, it construed the request as a request for visitation, and it ordered visitation on the first Saturday of each month.  In their pretrial statement, Petitioners requested visitation as an alternative to legal decision-making and placement, and Mother testified at trial that she agreed with allowing Petitioners visitation for one day each month.  Thus, Mother cannot complain now that Petitioners failed to properly request visitation.

interests . . . giving deference to the parents' position" and "applied the presumption that Mother has, and the parents shall, continue to make decisions that are in the Child's best interests." These statements are in accord with the standard for visitation in § 25-409(C), (E) and *McGovern*, 201 Ariz. at 177, ¶ 17. But the court also found: "There has been no credible showing that either parent is unfit. The Court finds Petitioners have failed to show the Child's best interests will be substantially harmed absent judicial intervention." To be awarded visitation rights, Petitioners were not required to make a showing of parental unfitness or substantial harm to C.H., as these requirements have been explicitly overturned by our supreme court. *Friedman*, 244 Ariz. at 116, ¶ 19 (disavowing *Goodman v. Forsen*, 239 Ariz. 110 (App. 2016)).

**¶22** Second, the court abused its discretion in finding that Father agreed with Mother's opinion on *visitation*. Early in the case, Mother opposed Petitioners' visitation with C.H., but after the court temporarily granted visitation of one day per month, she argued Petitioners should be limited to that amount. Father, however, remained more open about C.H. having broader contact with Petitioners. After the temporary order hearings, the court noted that Father's position on visitation was "not clear." Father told the BIA he thinks C.H. should remain with Mother, but he "understands the bond" C.H. has with Petitioners and "would be in agreement with [C.H.] having an ongoing relationship that would include visits." He stated that "if he had custody, [C.H.] could spend the summers with the [Petitioners]." At trial, Father briefly commented that he believed C.H. should remain with Mother, but did not address visitation.

**¶23** In its ruling, however, the court stated: "Father testified he agrees with Mother's position." Substantial evidence does not support this factual finding because Father never stated an opinion on the proffered visitation plan. Though Mother is the custodial parent, and Father has had limited contact with C.H., his opinion is entitled to equal weight with Mother's. To the extent his opinion about visitation conflicts with hers, "neither parent is entitled to a presumption in his or her favor," and the superior court's "factually supported determination of whether visitation is in the child's best interests controls." *Friedman*, 244 Ariz. at 119, ¶ 34. We vacate the visitation order and remand for further consideration of Father's opinion and application of the proper legal standard.

### III. Attorneys' Fees – Superior Court

**¶24** Petitioners argue the superior court erred in awarding attorneys' fees and costs to Mother. The court "may order a party to pay a

reasonable amount to the other party" for attorneys' fees and costs, "after considering . . . the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). The court ordered Petitioners to pay $1,500 of Mother's fees and costs, finding Petitioners acted unreasonably by discussing the litigation with C.H., which "undermined Mother's ability to parent." We conclude the court abused its discretion in considering this allegation. The reasonableness portion of § 25-324(A) refers to a party's legal positions, not the reasonableness of a party's conduct in general. *See In re Marriage of Williams*, 219 Ariz. 546, 548, ¶¶ 9–10 (App. 2008) (quotation and citation omitted). On remand, the court shall reconsider the award of attorneys' fees and costs.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm the superior court's ruling regarding § 25-409(A), but we vacate the remainder of the court's ruling and remand for further proceedings consistent with this decision, including taking additional evidence if the court deems it appropriate. In our discretion, we deny Petitioners' request for attorneys' fees under § 25-324 but award taxable costs to Petitioners upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA