NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CURTIS COGHILL, *Petitioner/Appellant*,

*v.*

BREANNA MOWRY, *Respondent/Appellee*.

No. 1 CA-CV 18-0038 FC
FILED 10-2-2018

Appeal from the Superior Court in Maricopa County
No. FC2016-008210
The Honorable Dewain D. Fox, Judge

**REVERSED AND REMANDED**

COUNSEL

Gary J. Frank, P.C., Phoenix
By Gary J. Frank

and

Stanley David Murray, Scottsdale

*Co-counsel for Petitioner/Appellant*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        Appellant Curtis Coghill appeals from the trial court's order denying his petition to establish grandparent visitation.  For the following reasons, we reverse and remand to the trial court for further proceedings consistent with this decision.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Breanna Mowry (mother) gave birth to her daughter Kierra in January 2013.  Curtis Coghill (Curtis) is the father of Joel Coghill (Joel), who died in August 2013.  Mother listed Joel as Kierra's father on Kierra's birth certificate, and mother and Joel held Joel out as Kierra's father.  The two were not married, and in May 2013 mother and Joel separated and Joel moved in with Curtis.  Joel continued to take care of Kierra during the day in Curtis's home, sometimes with Curtis's assistance.

¶3        After Joel's death, mother applied for and began receiving social security survivor's benefits for Kierra.  Curtis set up a bank account to provide financial assistance for Kierra, and in August 2014 mother and Kierra moved in to Curtis's home, rent free.  Mother was attending school and working, and Curtis often took care of Kierra.  He picked her up from preschool and frequently watched Kierra at night and on the weekends.  Curtis fed Kierra, clothed her, bathed her, did her laundry, read to her, took care of her when she was sick, took her to family celebrations, and played with her.  Mother and Kierra lived with Curtis for over a year and a half until they moved out in April 2016.

¶4        In March 2016, Curtis and mother got into an argument about her boyfriend (now husband) Bruce who was not welcome in Curtis's home.  Mother threatened to keep Curtis from seeing Kierra.  In June 2016, mother brought Kierra over to visit Curtis for several hours, and warned him not to post anything about the visit on Facebook because she did not want Bruce to find out that she had brought Kierra to see Curtis.  After this

visit, mother and Kierra had no further contact with Curtis. In her deposition, mother stated that Bruce was a factor in her decision to cut Kierra off from Curtis and the Coghill family.

**¶5**         In September 2016, Curtis filed a petition to establish grandparent visitation with Kierra. In her response, mother alleged, among other things, that Joel was not Kierra's father, that Curtis had a drinking problem and had made unwanted romantic advances toward her, and that Curtis had spoken to Kierra about Joel being in heaven against her express wishes. Mother requested an order of protection and a court-ordered DNA test. The trial court denied mother's request for a DNA test, finding that she had not established good cause to order the testing and that her request was untimely.

**¶6**         After a bench trial, the trial court first found that Kierra's birth certificate with Joel's name on it established his paternity "with the force and effect of a superior court judgment," and therefore Curtis was Kierra's paternal grandfather. *See Gutierrez v. Fox*, 242 Ariz. 259 (App. 2017). Second, the court found that one of Kierra's legal parents was deceased, she was born out of wedlock, and her legal parents were not married at the time the visitation petition was filed. These findings established the threshold requirement of the third-party visitation statute. *See* Ariz. Rev. Stat. (A.R.S.) § 25-409(C)(1), (2). The court then considered all of the factors enumerated in A.R.S. § 25-409(E), which provides:

> **E.** In deciding whether to grant visitation to a third party, the court shall give special weight to the legal parents' opinion of what serves their child's best interests and consider all relevant factors including:
>
> **1.** The historical relationship, if any, between the child and the person seeking visitation.
>
> **2.** The motivation of the requesting party seeking visitation.
>
> **3.** The motivation of the person objecting to the visitation.
>
> **4.** The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.

> **5.** If one or both of the child's parents are deceased, the benefit in maintaining an extended family relationship.

As to factor one, the court found that Kierra, who was four at the time of the hearing, had lived with Curtis (along with mother) for over a year and a half, and that mother admitted at trial that Curtis "did a lot" for Kierra and often cared for her, including taking care of her overnight and for an extended period when she went out of town. Further, the court found that mother admitted that Curtis and Kierra had a good relationship. As to the second statutory factor, the court found that Curtis's motivation in seeking visitation with Kierra was that he loved and cared for her, that he believed she saw him as her grandfather and caretaker and was concerned that she would feel abandoned by his removal from her life. As to the third factor, regarding mother's motivation in denying Curtis visitation, the court found:

> Mother failed to present credible evidence that: (i) [Curtis] made "flirtatious or romantic-type statements" to her while she lived in [Curtis's] home; (ii) [Curtis] purchased inappropriate attire for her; or (iii) the child was traumatized by [Curtis's] statements regarding Father being in Heaven and looking down on her. Moreover, the Court does not believe any of Mother's excuses for denying [Curtis] visitation with the child. Mother's true motive in denying [Curtis] visitation with the child is that she remarried, her new husband does not like [Curtis] and she wants her new husband to take on the role of the child's father.

As to factor four, the court found that "Mother did not present any credible evidence that the time requested by [Curtis] would interfere with or cause an adverse impact on the child's customary activities."[1]  Finally, with regard to the fifth statutory factor, the trial court found:

---

[1] Curtis sought visitation with Kierra as follows: 1) one weekend per month, 2) one weekend day per month, 3) one week during Kierra's summer vacation each year, and 4) visitation including an overnight on December 24 or December 25.

> Father is deceased. Following Father's death, [Curtis] was actively involved in the child's life until Mother stopped all contact on June 11, 2016. Prior to termination of contact, [Kierra] regularly interacted with Father's family through [Curtis]. If [Curtis] is denied visitation, [Kierra] will have no contact with Father's family. [Kierra] will benefit from maintaining contact with Father's family.

Despite these findings, the trial court denied Curtis's petition for grandparent visitation, concluding that he did not meet his "substantial burden" of showing that "denial of visitation would clearly and substantially impair [Kierra's best] interests" to rebut Mother's opinion on visitation, which the court gave "robust deference" to as required by *Goodman v. Forsen*, 239 Ariz. 110 (App. 2016), *disavowed by In re Marriage of Friedman and Roels*, 244 Ariz. 111 (2018).

¶7            Curtis filed a motion for new trial, which the trial court denied. Curtis timely appealed. We have jurisdiction pursuant to Arizona A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶8            We review a trial court's decision to grant or deny visitation under an abuse of discretion standard. *McGovern v. McGovern*, 201 Ariz. 172, 175, ¶ 6 (App. 2001) (citations omitted).

¶9            Mother has failed to file an answering brief in this matter. "[A] failure to file an answering brief is equivalent to a confession of error by appellee." *Welch v. United Mut. Benefit Ass'n*, 48 Ariz. 173, 174 (1936) (citations omitted). We may reverse and remand for this reason alone. *Id.* at 175. Moreover, in reaching its decision, the trial court relied on an opinion of this court which is no longer good law. *Goodman*, 239 Ariz. 110, *disavowed by In re Marriage of Friedman and Roel*, 244 Ariz. 111 (2018). In *Marriage of Friedman and Roels*, our supreme court rejected *Goodman's* "broader interpretation of 'special weight'," and held that a nonparent need not be subject to "a heightened burden of proof beyond that required under *Troxel* and *McGovern*." *Friedman*, 244 Ariz. at 116-17, ¶¶ 19, 20. In light of *Friedman*, we reverse and remand to the trial court to reconsider whether grandparent visitation with Curtis is in Kierra's best interests.

## CONCLUSION

¶10     For the foregoing reasons, we reverse and remand to the trial court for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA