NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

VALARIE RIVERA and JESSE CARRILLO, *Petitioners/Appellees*,

*v.*

DIAMOND ENRIQUEZ WEBB, *Respondent/Appellant*.[1]

No. 1 CA-CV 25-0556 FC

FILED 05-11-2026

Appeal from the Superior Court in Maricopa County
No. FC2022-051024
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

Defenders of Children, Phoenix
By Donna Berlinski
*Counsel for Respondent/Appellant*

Pangerl Law Firm, P.L.L.C., Phoenix
By Regina M. Pangerl
*Counsel for Petitioners/Appellees*

---

[1] The caption has been amended to reflect the correct parties and shall be used for future filings in this appeal.

―――――――――――――――――

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

―――――――――――――――――

**W I L L I A M S**, Judge:

¶1　　　　Diamond Enriquez Webb ("Mother") appeals the superior court's order granting Valarie Rivera ("Rivera") and Jesse Carrillo ("Carrillo") (collectively, "the Petitioners") third-party visitation with two of Mother's minor children. Because the record sufficiently supports the visitation award, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2　　　　Mother and Randy Carrillo ("Father") never married but have two children together—a daughter ("Daughter"), born in 2012, and a son ("Son"), born in 2014 (collectively, "the Children"). For substantial periods between October 2014 and November 2021, the Petitioners—Father's aunt and uncle—served as the Children's primary caregivers, largely due to Mother's incarceration and medical issues and Father's minimal contact. In 2018 and 2019, Mother signed temporary guardianship agreements granting the Petitioners legal decision-making authority for the Children. But in November 2021, Mother severed all contact between the Petitioners and the Children.

¶3　　　　In April 2022, the Petitioners petitioned to establish third-party rights for legal decision-making, visitation, and child support. In response, Mother acknowledged the Petitioners' prior service as the Children's caregivers, but explained she "no longer wish[ed] to continue contact" with them because of certain, enumerated "concerns" with their behavior: failing to maintain up-to-date contact information, failing to timely return phone calls, failing to ensure proper hygiene/dress for the Children, preventing the Children from praying, encouraging the Children to refer to them as "Mom" and "Dad," offering Mother money to see the Children, and reaching out to family members for "dirt" on Mother. In June 2022, Mother contacted police to report that Carrillo had showered with Son and washed his genitals. She later submitted a pretrial statement notifying the superior court that police were actively investigating Carrillo's conduct with the Children.

2

¶4 Pending trial, the Petitioners repeatedly moved for temporary orders. The superior court denied their first three requests but assigned a court appointed advisor ("the CAA") to investigate the matter and make a recommendation to the court.

¶5 After interviewing Rivera, Carrillo, Mother, Father, Daughter, and Son, the CAA submitted a report summarizing her investigative findings. During a combined interview, the Petitioners denied Mother's allegations of misconduct and suggested she may have cut off contact with them in retaliation for their report to the Department of Child Safety in November 2021 alleging that a maternal relative had abused the Children's half-sibling. When Mother spoke with the CAA, she explained that she severed the Children's relationship with the Petitioners because the Children "are afraid of them." She also stated that she allows Father supervised visitation with the Children. In his interview, Father acknowledged that Mother had permitted him some supervised visits but "expressed frustration" that she had largely "kept the children from him." When asked about Mother's allegations that Carrillo had engaged in sexual misconduct, Father denied that the Petitioners posed any risk of harm to the Children, stating Mother had told Daughter "what to say" and maintaining that Son had "never disclosed sexual misconduct" to him. While stating he did not want visitation "forced" upon the Children, Father recommended that the Petitioners have supervised visits. Finally, during their separate interviews, the Children independently: (1) stated they enjoyed visiting with Father and did not believe Mother needed to be present for their visits, (2) expressed an interest in visiting with the Petitioners, (3) recounted that Mother told them the Petitioners were trying to take them away from her, (4) acknowledged that Mother had provided them with negative information they should relay to the CAA about the Petitioners, and (5) denied that Carrillo ever "got in the shower" with them as reported by Mother.

¶6 After holding an evidentiary hearing on their fourth request for temporary orders, the superior court granted the Petitioners unsupervised visitation with the Children for three hours on the first Saturday of every month, "to take place at a public setting." Three months later, the Petitioners moved to enforce the temporary visitation order. Mother responded by asking for "clarification of what constitutes compliance," stating the "children refuse to engage in visitation with the Petitioners." The court summarily denied Mother's motion for clarification.

¶7 In a pretrial statement, the Petitioners abandoned their claims for legal decision-making authority and child support, instead limiting

their request to visitation. Mother, in turn, reasserted her concerns with the Petitioners' conduct.

¶8 At trial, the CAA, Carrillo, Mother, and Father testified. Consistent with her investigative report, the CAA briefly recounted her interviews with the Children. When asked to opine on whether visitation would be in the Children's best interests, the CAA expressed uncertainty, explaining the situation was "very complicated" and any visitation "would be very difficult" without "therapeutic intervention that would require Mother's participation."

¶9 Next, Carrillo testified that he and Rivera served as the Children's primary caregivers for approximately eight years. He denied asking the Children to refer to him and Rivera as "mom and dad" and testified he never forbade the Children from praying in his home. He also stated that since the court entered temporary orders, he and Rivera had not had any visitation with Daughter and only one visit with Son, opining that Mother controlled and manipulated the Children.

¶10 For his part, Father testified that he approved of the Petitioners having visitation with the Children. He rejected Mother's allegation that the Petitioners posed a danger to the Children, and after confirming his understanding that the Children's best interests were paramount, opined that visitation with the Petitioners would serve those interests. When asked whether he believed Mother manipulated the Children, Father stated that he believed Mother "talked to [the Children] in a certain way"—causing them to fear they would not see her again if they visited with the Petitioners. Father characterized these fears as "just not normal."

¶11 Finally, Mother testified that visiting with the Petitioners would be detrimental to the Children's mental and emotional health and contrary to their best interests. Although she acknowledged the Petitioners had served as the Children's caregivers for substantial periods, she disputed Carrillo's characterization of the relationship, explaining that other than her period of incarceration, she primarily cared for the Children—except for unspecified periods when she "needed, like, more help." Mother testified that she filed a police report alleging Carrillo had "forcibly washed" Son's genitals and obliquely acknowledged that neither child had confirmed the allegation when interviewed by police. To substantiate her claim that the Petitioners pose a danger to the Children, Mother pointed to therapeutic notes from the Children's telehealth counseling records, which reflect Son reported that Carrillo had washed

4

him in the shower and Daughter disclosed Carrillo had made her feel "uncomfortable" and showed her pornography.

¶12 After Mother testified, Father addressed the superior court directly, stating that Mother had largely prevented him from seeing the Children throughout their lives. He explained that he had "to speak to [Mother] a certain way" or risk being cut off from the Children entirely. He then urged the court to grant the Petitioners supervised visitation with the Children. At that point, the Petitioners' attorney told the court that the police had closed the investigation into Carrillo without filing any charges.

¶13 After taking the matter under advisement, the superior court entered a final order granting the Petitioners supervised visitation "on the first Saturday of each month," beginning with one-hour visits and gradually increasing to three-hour visits over a six-month period. Mother moved to stay the visitation order, which the court denied. Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶14 We review a superior court's visitation ruling for an abuse of discretion. *McGovern v. McGovern*, 201 Ariz. 172, 175, ¶ 6 (App. 2001). A court abuses its discretion by committing an error of law while reaching a discretionary conclusion, *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008), or "when the record is devoid of competent evidence to support the court's decision," *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019) (citation modified). Viewing the evidence in the light most favorable to upholding the visitation ruling, *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 120, ¶ 36 (2018), we defer to the court's factual findings if supported by the record, but review de novo questions of statutory interpretation, *Borja v. Borja*, 254 Ariz. 309, 313, ¶ 10 (App. 2022).

¶15 Under A.R.S. § 25-409(C), the superior court may grant visitation rights to a person other than a legal parent "on a finding that the visitation is in the child's best interests" if, as relevant here, "[t]he child was born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed."

> In deciding whether to grant visitation to a third party, the court shall give *special weight* to the *legal parents' opinion* of what serves *their* child's best interests and consider *all relevant factors* including:

1. The historical relationship, if any, between the child and the person seeking visitation.

2. The motivation of the requesting party seeking visitation.

3. The motivation of the person objecting to visitation.

4. The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.

5. If one or both of the child's parents are deceased, the benefit in maintaining an extended family relationship.

A.R.S. § 25-409(E) (emphasis added).

## I.     The Weight Accorded Each Parent's Best-Interests Opinion

¶16          Mother challenges the superior court's determination concerning the weight to attribute to her and Father's best-interests opinions.

¶17          First, Mother contends the superior court erred by finding Father's best-interests opinion conflicted with her best-interests opinion. Because Father never submitted a "written position in the case," Mother contends the record does not support a finding that his opinion on visitation opposed her own.

¶18          We see no merit to Mother's contention. While Father never filed a written opinion statement with the superior court, he sat for an interview with the CAA, in which he denied that the Petitioners pose any danger to the Children, suggested that Mother manufactured the misconduct allegations against the Petitioners, and recommended that the court grant the Petitioners supervised visitation. More importantly, Father testified to his opinions at trial, specifically confirming that he understood the best interests of the Children were paramount to the visitation determination and stating his belief that granting the Petitioners supervised visitation would serve those interests. Thus, contrary to Mother's contention, the record reasonably supports the court's finding that Father's best-interests opinion conflicted with her best-interests opinion.

¶19          Next, Mother argues the superior court improperly afforded Father's best-interests opinion equal weight to her own, leading to the erroneous conclusion that the parents' best-interests opinions "canceled

6

each other out." According to Mother, a "legal parent's opinion under A.R.S. § 25-409 should be weighted based on the level of legal decision making [he or she has] established."

¶20         To protect parents' fundamental right "to the 'care, custody, and control of their children,'" *Borja*, 254 Ariz. at 313, ¶ 8 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)), courts must: (1) apply a rebuttable "presumption that a fit parent acts in his or her child's best interest" in making decisions concerning visitation, and (2) afford "special weight to a fit parent's determination of whether visitation is in the child's best interest," *McGovern*, 201 Ariz. at 177–78, ¶¶ 17–18 (citation modified). "Special weight describes 'the deference courts must afford a parent's visitation opinion, which prevents state interference with parents' fundamental right to make decisions concerning the rearing of their children.'" *Douros v. Morse*, 258 Ariz. 546, 550, ¶ 15 (App. 2024) (quoting *Friedman*, 244 Ariz. at 115, ¶ 15).

¶21         "Even if Father's opinion" opposed her own, Mother contends "it is an unconstitutional imposition on her fundamental right as the sole custodial parent to grant his opinion equal weight with hers." Additionally, Mother asserts that Father "is an unfit parent" and therefore his best-interests opinion is not entitled to "special weight" deference. In making these arguments, Mother directly challenges *Friedman*, arguing the Arizona Supreme Court, in that case, improperly placed "a mere gamete donor" on "equal footing" with "an actual parent."

¶22         In *Friedman*, our supreme court squarely addressed how courts presiding over third-party visitation requests should weigh the conflicting best-interests opinions of legal parents. In that case, the mother and father of two minor children divorced. 244 Ariz. at 113, ¶ 2. The dissolution decree granted the mother sole custody of and legal decision-making for the children and awarded the father only supervised parenting time due to his "psychiatric issues" and "abusive behavior toward the children." *Id.* Before the divorce, the paternal grandparents took an active role in the children's lives. *Id.* at ¶ 3. After the divorce, the mother "obstructed" the paternal grandparents' attempts to maintain a relationship with the children. *Id.* With "nearly four years" of "almost no contact" with the children, the paternal grandparents sought an award of third-party visitation. *Id.* at ¶¶ 3–4. At trial, the mother "testified that she believed visitation would be harmful to her children's mental health." *Id.* at 113–14, ¶ 6. The father, on the other hand, "expressed his belief that visitation would benefit the children." *Id.* at 114, ¶ 7. The superior court granted the paternal grandparents' visitation petition. *Id.* at ¶ 8. On appeal, the mother

argued that the superior court "lacked authority to award visitation to [the paternal grandparents] absent a showing that her visitation opinion would cause substantial harm to the children's bests interests." *Id.* at 116, ¶ 18.

**¶23**      To evaluate the mother's legal challenge, the supreme court turned to the controlling statutory language. First, the supreme court noted that A.R.S. § 25-409(E) "does not contain any varying gradations of 'special weight'" or any qualifying language limiting who receives the benefit of "special weight" deference "other than "'legal parent' status." *Id.* at 117, ¶ 21. Finding "the legislature's use . . . of 'legal parents' in the plural possessive form" significant, the supreme court determined that A.R.S. § 25-409(E) "contemplates scenarios in which two legal parents' visitation opinions are entitled to 'special weight,'" yet "the legislature did not qualify that directive" by requiring parental agreement. *Id.*

**¶24**      "Because no court had found him to be 'an unfit parent,'" the supreme court determined that the father, like the mother, was "entitled" to a presumption that he acted in the children's best interests. *Id.* at ¶ 22. But the supreme court further concluded that "the parental presumption" did not apply because the "two legal parents ha[d] competing visitation views." *Id.* Under such circumstances, "the respective presumptions effectively and necessarily cancel each other out," and the superior court may grant visitation if, after considering all relevant factors, it finds visitation is in the child's best interests. *Id.* at ¶¶ 22–23. Stated differently, the supreme court held that "when two legal parents disagree about whether visitation is in their child's best interests, . . . neither parent is entitled to a presumption in his or her favor and the parents' conflicting opinions must give way to the court's finding on whether visitation is in the child's best interests." *Id.* at 113, ¶ 1.

**¶25**      In reaching this conclusion, the supreme court stressed that under A.R.S. § 25-409(E)'s plain language, the parental presumption "does not hinge on whether one has custody" or "legal decision-making authority," but on "'legal parent' status." *Id.* at 118–19, ¶¶ 26, 30. To the extent the mother argued that the father was unfit and therefore did not qualify for the parental presumption, the supreme court held that the "significant restrictions" on his parenting time did "not strip him of, or even limit, his fundamental right to direct the upbringing of his children." *Id.* at 119, ¶ 31 (citation modified). In fact, the supreme court clarified that whether a parent qualifies for the parental presumption "does not turn on whether he is declared to be a 'fit' parent, but on whether his parental rights have been terminated." *Id.* at ¶ 32; *see also* A.R.S. § 25-401(4) (defining "legal

parent" as a "biological or adoptive parent whose parental rights have not been terminated").

**¶26**        On appeal, Mother urges this court to "overturn" *Friedman*. But we "are bound by the decisions of [the Arizona Supreme Court] and do not have the authority to modify or disregard" its rulings. *State v. Smyers*, 207 Ariz. 314, 318, ¶ 15 n.4 (2004). Accordingly, we apply *Friedman* to this case and find it determinative. The superior court found both Mother and Father "fit" and therefore entitled to the parental presumption. We do not question these findings. Mother did not directly contest Father's fitness in the superior court and thus waived such challenge on appeal. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived."). Waiver aside, our supreme court has declared, unequivocally, that "a parent is presumed to be 'fit' until he or she has been adjudicated unfit." *Friedman*, 244 Ariz. at 119, ¶ 33. Therefore, having found that Mother's best-interests opinion conflicted with Father's best-interests opinion, the superior court properly determined that neither parent's opinion was entitled to special weight.

## II.    Determination of the Children's Best Interests

**¶27**        Mother contests the superior court's finding that supervised visitation with the Petitioners is in the Children's best interests. She contends the court failed to consider all the relevant factors and adequately explain "how the factors it considered affected its determination." She also argues that the court erroneously placed the burden of proof on her to demonstrate how visitation would harm the Children rather than upon the Petitioners to show how visitation would serve the Children's best interests.

**¶28**        Because the parents' conflicting opinions canceled each other out, the superior court conducted an independent best-interests analysis. As detailed in its final order, the court "considered all relevant factors, including those enumerated in A.R.S. § 25-409(E)." Specific to A.R.S. § 25-409(E), the court found, in relevant part:

1. *The historical relationship, if any, between the child and the person seeking visitation.*

   Great Aunt and Uncle cared for the children exclusively while Mother was in the Department of Corrections ("DOC") and during her subsequent medical issues after released from DOC. Father has not established legal decision making or parenting time. Great Aunt and Uncle believe Mother began

9

withholding the children from them because she did not want the children to have a relationship with Father. Great Aunt and Uncle cared for the children for eight (8) years, from the time [Daughter] was two (2) years old, and [Son] was a few weeks old. . . .

2. *The motivation of the requesting party seeking visitation.*

Great Aunt and Uncle are motivated by the strong historical bond with the children.

3. *The motivation of the person objecting to visitation.*

Mother's objection is based on the children's disclosures that Great Aunt and Uncle forced the children to bathe in the apartment swimming pool, forced the children to call them "mom" and "dad," and allegations that Great Uncle hit [Daughter] and forced [Son] to shower with him wherein Great Uncle insisted on washing the child's genitals after the child requested to do it himself. Mother alleges that the children disclosed that Great Aunt and Uncle talk negatively about Mother. Mother does not believe Great Aunt and Uncle gave sufficient weight to her concerns.

4. *The quantity of visitation time requested and the potential adverse impact that visitation will have on the child's customary activities.*

Great Aunt and Uncle are requesting the Court affirm the temporary orders visitation of three (3) hours . . . on the first Saturday of each month in a public setting. . . . The Court finds this three (3) hour visitation is not likely to have an impact on the children's customary activities but could impact their emotional health based on testimony from the [CAA].

5. *If one or both of the child's parents are deceased, the benefit in maintaining an extended family relationship.*

Both parents are alive.

Given these findings, and its consideration of other, unspecified "relevant factors," the court granted the Petitioners third-party visitation with the Children "based on the strong historical bond and lack of demonstrated safety concerns."

¶29        Despite the superior court's declaration that it "considered all relevant factors," Mother contends the court improperly omitted consideration of the factors listed in A.R.S. § 25-403. Specifically, Mother asserts that two A.R.S. § 25-403 factors are relevant here:

> A. The court shall determine legal decision-making and parenting time, either originally or on petition for modification, in accordance with the best interests of the child. The court shall consider all factors that are relevant to the child's physical and emotional well-being, including:
>
> . . . .
>
> 4. If the child is of suitable age and maturity, the wishes of the child as to legal decision-making and parenting time.
>
> . . . .
>
> 9. The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding legal decision-making or parenting time.

¶30        Applying these A.R.S. § 25-403 factors to this case, Mother argues the superior court should have considered evidence that: (1) the Children experienced discomfort and anxiety when faced with the prospect of third-party visitation, as documented in their telehealth counseling records; (2) the Children refused to comply with the temporary visitation orders; (3) the Petitioners offered Mother money in exchange for time with the Children and solicited "dirt" on her from family members for litigation purposes; and (4) the Petitioners attempted to coerce the Children to comply with the temporary orders by threatening that their refusal to do so would "get Mother in trouble" and "guilt-tripping them about their great-grandmother's impending death."

¶31        While a court's best-interests analysis *may* include factors under A.R.S. § 25-403, that statute governs legal decision-making and parenting time, not the visitation rights of third parties. *See Douros*, 258 Ariz. at 550, ¶ 18 (explaining that in addition to the A.R.S. § 25-409(E) factors, a court "may also consider the general best interests factors in Section 25-403," but noting that those "factors are tailored to a custody dispute between two lawful parents," in "contrast with a third-party visitation dispute"). We also note that A.R.S. § 25-409 does not require the court to make specific findings on the record regarding a child's best interests in

third-party visitation cases, so a court does not run afoul of the statute by failing to identify all relevant factors considered. *Cf.* A.R.S. § 25-403(B) (requiring specific best-interests findings in contested cases regarding legal decision-making or parenting time). To be sure, specific findings on all relevant factors "would assist on appeal or in a future modification," but "they are not required under [A.R.S.] § 25-409 unless timely requested under Arizona Rule of Family Law Procedure 82." *Torrez v. Bombard*, 1 CA-CV 16-0758 FC, 2018 WL 3722451, at *3, ¶ 16 (Ariz. App. July 31, 2018) (mem. decision).

¶32 Contrary to Mother's contention, the record does not reflect that the superior court failed to consider all relevant factors in analyzing the Children's best interests. Without question, Mother presented evidence that the Children did not wish to visit with the Petitioners and refused to comply with the temporary orders, but during their separate interviews with the CAA, each child independently expressed an interest in third-party visitation. Likewise, Mother presented evidence that the Petitioners attempted to coerce both her and the Children into visitation, but the Petitioners and Father claimed, both in their interviews with the CAA and at trial, that Mother controlled the Children by causing them to fear the Petitioners and believe that they may be taken away from Mother permanently. During their interviews with the CAA, the Children largely substantiated these claims, disclosing that Mother had instructed them to share negative information about the Petitioners and, when asked, denying Mother's allegations of sexual misconduct against Carrillo. We defer to the superior court's determination of witnesses' credibility and the weight to give evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). Given the conflicting evidence concerning the Children's wishes and the manipulative tactics allegedly used by the parties, on this record, Mother has not shown the superior court failed to consider all relevant factors in making its best-interests termination.

¶33 Next, Mother argues the superior court failed to sufficiently explain how the factors it considered led to the conclusion that third-party visitation is in the Children's best interests. She asserts that "mere long-term caregiving" cannot justify an award of third-party visitation, and she disputes the court's finding that the Petitioners and the Children have a "strong bond," characterizing that finding as "com[ing] out of nowhere."

¶34 "When ordering third-party visitation, *especially over the objection of a fit parent*, the court must demonstrate how the factors it considered affected its determination of the child's best interests." *Douros*, 258 Ariz. at 551, ¶ 21 (emphasis added). The formation of a "good

relationship" between a child and a third party, alone, does not provide a legal basis for court-ordered visitation. *Id.* "The court must explain why visitation is in the best interest of the *child*—not the third party." *Id.* "Most critically, [A.R.S. § 25-409's] direction to give special weight to the fit, legal parent's opinion requires some analysis why the court's evaluation of the child's best interests trumps that of the fit parent." *Id.*

¶35 As outlined in its A.R.S. § 25-409(E) analysis, the superior court found that the Petitioners served as the Children's primary caregivers for eight years, from the time Daughter was two years old and Son was a few weeks old until Mother severed contact. The court further found that Petitioners sought visitation because of their "strong historical bond with the [C]hildren" and that Mother objected to visitation because she believes the Petitioners have engaged in misconduct with the Children. The court concluded that no evidence substantiated Mother's "safety concerns" and therefore visitation "should be encouraged" based on the "strong historical bond" between the Petitioners and the Children.

¶36 While the superior court's explication of its A.R.S. § 25-409(E) analysis is brief, and a more fulsome recitation of all the relevant factors considered and the factual basis for ordering third-party visitation could have better informed the parties and assisted this court on review, Mother's contention that the court failed to conduct a full A.R.S. § 25-409(E) analysis is without merit. Here, the court was not tasked with explaining how its evaluation of the Children's best interests "trumped" that of a fit parent because Mother and Father offered conflicting best-interests opinions that canceled each other out. Rather than deferring to Mother's best-interests opinion, the court was charged with independently assessing whether visitation with Petitioners served the Children's best interests. As this court has previously noted, when "a parent has shared child-rearing decisions and responsibilities with a third party for an extended period, thereby allowing a parent-like relationship to develop, terminating that relationship may not be in the child's best interests." *Douros*, 258 Ariz. at 554, ¶ 40 (Catlett, J., concurring). Thus, rather than "com[ing] out of nowhere," the court's determination that the Petitioners and Children share a "strong historical bond" logically flows from its finding that the Petitioners primarily cared for the Children for most of their lives—since Daughter was a toddler and Son was an infant. In fact, at trial, Mother acknowledged that the Petitioners "did create this type of bond" with the Children during their caregiving. On this record, reasonable evidence supports the court's best-interests determination.

**¶37** Finally, Mother argues the superior court erroneously shifted the burden of proof from the Petitioners to her, as reflected in its finding that the evidence did not substantiate her claimed safety concerns. In support of this contention, Mother cites *Goodman v. Forsen*, 239 Ariz. 110 (App. 2016), which holds that "a parent opposing visitation does not bear the burden of proof under [A.R.S. § 25-409]"; instead, "'special weight' means the party seeking visitation must prove that a fit parent's decision to deny visitation would substantially impair the child's best interests." *Id.* at 111, ¶ 1.

**¶38** Despite her reliance on *Goodman*, Mother's best-interests opinion was not entitled to special weight, and the superior court's A.R.S. § 25-409(E) analysis does not reflect improper burden shifting. Rather than *requiring* Mother to prove that visitation with the Petitioners was contrary to the Children's best interests, the court simply found that Mother's unsubstantiated safety concerns did not *support* a finding that visitation was contrary to the Children's best interests. To the extent Mother contends that the "supervision" restriction on the Petitioners' visitation constitutes "a tacit acknowledgment" that the Petitioners "would indeed put the children at risk," belying the court's finding of a "lack of demonstrated safety concerns," we disagree. As part of its visitation order, the superior court specifically and repeatedly addressed the Children's fears, stating it would impose certain "parameters" to ensure "the children understand the visit is just that" and "they will be returned to Mother." Read within that broader context, the supervision restriction does not evince a belief that the Petitioners pose a danger to the Children.

**¶39** In sum, reasonable, competent evidence supports the superior court's factual findings and best-interests determination. Therefore, the court did not abuse its discretion in granting the Petitioners third-party visitation.

## CONCLUSION

¶**40**　　　We affirm the superior court's visitation order. The Petitioners request attorney's fees and costs on appeal under A.R.S. § 25-324. In our discretion, we decline to award fees. However, because the Petitioners are the prevailing party, we award them their reasonable costs upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:　　　JR